UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

In re: DAVID J. GARSIA (Debtor)
Bankruptcy Case No. 25-16412 (CMG)

DAVID J. GARSIA
Plaintiff, Pro Se

v.

WILLIAM "BILLY" PROCIDA, et al.

_____

ADVERSARY COMPLAINT
(Fraudulent Transfer, Civil Rights, Fiduciary Breach)
Filed: June 23, 2025
Adversary Proceeding No: _____

Submitted by:
David J. Garsia (Pro Se)
54 Hunter Road
North Haledon, NJ 07508
create.artfactory@gmail.com
(201) 254-4840

U S. BANKRUPTCY COURT
FILED
NEWARK, NJ

2025 JUN 23  P 3: 10

JEANNE A. HAUGHTON

BY: D. Clponsen
DEPUTY CLERK

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

In re:
DAVID J. GARSIA,
Debtor.

DAVID J. GARSIA,
Plaintiff, Pro Se

v.

WILLIAM "BILLY" PROCIDA;DEREK WEISSMAN; SILLS CUMMIS & GROSS P.C.; MICHAEL
R. LEIGHTON; 100 MILE FUND LLC; 100 MILE REIT INC.; 100 MILE RENARD TOTOWA LLC;
SPRUCE STREET PARTNERS LLC; STEVEN D. PLOFKER; BOBBI BROWN PLOFKER;
DINO TOMASSETTI; RON SIMONCINI; ERIC R. PERKINS; SHARI HARTSTEIN; HARRY
BYRNES; ERNEST RUCKER; NAI JAMES E. HANSON; PATRICIA A. STAIANO; JOHN
O'BOYLE; CHARLES FLORIO; ANDREW KOVAR; MARIO PROCIDA; PETER PROCIDA; 468
TOTOWA OWNER, LLC;

JOHN DOES 1–10 – "Procida Entity Investors";
JANE DOES 11–20 – "Professional Enablers";
JOHN DOES 21–30 – "Shill Entity Operators";
JANE DOES 31–40 – "Retaliatory Agents";
JOHN DOES 41–50 – "Political and Public Sector Enablers";
JANE DOES 51–60 – "Community Organization Co-Conspirators"

Defendants.

Adversary Proceeding No. _____
Chapter 7 Case No. 25-16412 (CMG) Judge: Hon. Christine M. Gravelle

ADVERSARY COMPLAINT FOR FRAUDULENT TRANSFER, CIVIL RIGHTS VIOLATIONS,
BREACH OF FIDUCIARY DUTY, AND RELATED CLAIMS
JURY TRIAL DEMANDED

---

## INTRODUCTION

1. This adversary proceeding seeks to recover property fraudulently transferred out of the
   estate of David J. Garsia, including 468 Totowa Avenue and the Art Factory business.
2. Plaintiff David J. Garsia, appearing pro se, brings this action under 11 U.S.C. §§ 544,
   548, and New Jersey's Uniform Fraudulent Transfer Act to reverse fraudulent

conveyances, restore value to the estate, and hold liable those who participated in the scheme.

## JURISDICTION AND VENUE

3.  This Court has jurisdiction under 28 U.S.C. § 157 and 28 U.S.C. § 1334.
4.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(H).
5.  Venue is proper under 28 U.S.C. § 1409(a).

## PARTIES

6.  A complete list of named defendants, their roles, and addresses for service is attached as Exhibit A.

### UNKNOWN BUT LIABLE DEFENDANTS

7.  JOHN DOES 1–10 – "Procida Entity Investors": Unknown investors in Procida-controlled entities who financed the fraudulent scheme.
8.  JANE DOES 11–20 – "Professional Enablers": Lawyers, brokers, and accountants who knowingly facilitated the transfers and suppressions.
9.  JOHN DOES 21–30 – "Shill Entity Operators": Nominee members or LLC agents who enabled title fraud and laundering.
10. JANE DOES 31–40 – "Retaliatory Agents": Court officers and individuals who looted, surveilled, or threatened the Garsia family.
11. JOHN DOES 41–50 – "Political and Public Sector Enablers": Officials and government agents who facilitated the fraudulent scheme or suppressed investigation.
12. JANE DOES 51–60 – "Community Organization Co-Conspirators": Nonprofit leaders and board members who supported the hostile takeover.

## FACTUAL BACKGROUND

13. Plaintiff incorporates by reference the Whistleblower Complaint filed June 21, 2025, attached as Exhibit B.
14. Key facts include:
  - Fraudulent transfer of 468 Totowa Avenue through an insider-controlled LLC.
  - Appointment of a conflicted Chapter 11 Trustee who enabled asset stripping.
  - Failure to secure estate assets, resulting in theft and destruction.
  - Unauthorized occupation and looting of Debtor's residence by a city official hired as "security."

- Suppression of Plaintiff's First Amendment rights and retaliation.

## CLAIMS FOR RELIEF

Count I: Fraudulent Transfers – 11 U.S.C. §§ 544, 548 and NJ UFTA
Transfers were made with actual intent to hinder, delay, or defraud creditors.

Count II: Breach of Fiduciary Duty – Trustee and Agents
Trustee and appointed professionals violated their fiduciary obligations.

Count III: Civil Rights Violations – 42 U.S.C. § 1983
Deprivation of due process and free speech through state-enabled acts.

Count IV: Abuse of Process and Professional Malpractice
Estate counsel and others misused legal authority to execute the hostile takeover.

## DAMAGES

15. Estimated loss:
- 468 Totowa Avenue: $9,750,000
- Great Falls Industrial Park: $20,000,000+
- Wedding deposit and contractor harm: $3,310,734.36
16. Punitive and treble damages and attorneys' fees are sought.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests:

A. Reversal of all fraudulent transfers;
B. Restoration of estate assets and value;
C. Joint and several liability for aiding the scheme;
D. Injunctive relief to prevent further retaliation;
E. Costs of suit and further relief as this Court deems just and proper.

Respectfully submitted,
DAVID J. GARSIA
Pro Se Plaintiff
54 Hunter Road
North Haledon, NJ 07508
create.artfactory@gmail.com

(201) 254-4840
Dated: June 23, 2025

# EXHIBIT A

**Named Defendants, Roles, and Service Addresses**

This exhibit lists all named Defendants in the Complaint, along with their roles in the alleged criminal enterprise and their known addresses for service. It includes specific allegations tied to each individual or entity's participation in the scheme.

## EXHIBIT A: NAMED DEFENDANTS AND ROLES

### 1. William "Billy" Procida
Role: Alleged architect and ringleader of the scheme. Controlled 100 Mile Fund and associated entities. Personally signed fraudulent transfer documents and sent threatening communications.
Legal Exposure: RICO conspiracy, wire/mail fraud, extortion, fraudulent transfers, money laundering.
Address: 570 Sylvan Ave, Englewood Cliffs, NJ 07632

### 2. Derek Weissman
Role: Officer at 100 Mile Fund; coordinated with Procida in executing loan-to-own strategy and business sabotage.
Legal Exposure: RICO conspiracy, tortious interference, aiding and abetting fraud.
Address: 570 Sylvan Ave, Englewood Cliffs, NJ 07632

### 3. Sills Cummis & Gross P.C.
Role: Law firm that enabled and coordinated fraudulent transactions, engineered ownership misrepresentations, and pursued adversarial litigation to suppress opposition.
Legal Exposure: RICO conspiracy, aiding and abetting fraud, abuse of process, professional misconduct.
Address: One Riverfront Plaza, Newark, NJ 07102

### 4. Michael R. Leighton, Esq.
Role: Sills Cummis attorney; involved in structuring the fraudulent transactions. Copied on threat emails from Procida and continued prosecution despite known falsehoods.
Legal Exposure: RICO conspiracy, aiding and abetting fraud, mail/wire fraud, professional misconduct.
Address: One Riverfront Plaza, Newark, NJ 07102

### 5. 100 Mile Fund LLC
Role: Procida-controlled entity used to acquire properties through predatory lending and defaults.
Legal Exposure: Criminal enterprise under RICO, fraudulent transfer recipient, unjust enrichment.
Address: 570 Sylvan Ave, Englewood Cliffs, NJ 07632

### 6. 100 Mile REIT Inc.
Role: Affiliate fund involved in financing and ownership of seized assets.
Legal Exposure: RICO enterprise, fraudulent financial conduct.
Address: 570 Sylvan Ave, Englewood Cliffs, NJ 07632

### 7. 100 Mile Renard Totowa LLC
Role: Shill entity used for transfer of 468 Totowa Avenue.
Legal Exposure: RICO predicate actor, fraudulent transferee.

Address: 570 Sylvan Ave, Englewood Cliffs, NJ 07632 and 73 Market Street, Suite 376, Yonkers, NY 10710

### 8. Renard Management Inc.
Role: Affiliate of 100 Mile entities; involved in the fraudulent acquisition of property.
Legal Exposure: RICO co-conspirator, fraudulent transfer agent.
Address: 73 Market Street, Suite 376, Yonkers, NY 10710

### 9. Spruce Street Partners LLC
Role: Entity used in acquisition of Great Falls property; affiliated with Plofker and Brown.
Legal Exposure: RICO enterprise actor, fraudulent transferee.
Address: 7 N Willow Street, Suite 8B, Montclair, NJ 07042

### 10. Steven D. Plofker, Esq.
Role: Owner of Spruce Street Partners LLC and husband of Bobbi Brown. Owns competing real estate projects.
Legal Exposure: RICO co-conspirator, unjust enrichment.
Address: 7 N Willow Street, Suite 8B, Montclair, NJ 07042

### 11. Bobbi Brown Plofker
Role: Business partner to Steven Plofker, investor and beneficiary of Spruce Street Partners.
Legal Exposure: RICO co-conspirator, unjust enrichment.
Address: 7 N Willow Street, Suite 8B, Montclair, NJ 07042

### 12. Dino Tomassetti
Role: Signatory and purported buyer of 468 Totowa. Allegedly unaware of transaction details.
Legal Exposure: RICO actor, fraudulent transferee.
Address: 1590 Troy Avenue, Brooklyn, NY 11234

### 13. Eric R. Perkins, Esq.
Role: Chapter 11 Trustee. Enabled theft and burglary by failing to secure estate, violating fiduciary duties, and acting in collusion with Procida. Oversaw unlawful eviction and tolerated property destruction.
Legal Exposure: RICO conspiracy, civil rights violations under 42 U.S.C. §1983, abuse of process, breach of fiduciary duty.
Address: 354 Eisenhower Parkway, Suite 1500, Livingston, NJ 07039

### 14. Shari Hartstein
Role: Court-appointed estate accountant. Failed to disclose conflict of interest (her brother was part of Procida's takeover team). Withheld Donata Garsia's passport and financial documents.
Legal Exposure: Obstruction of justice, civil rights violations, conflict of interest, breach of fiduciary duty.
Address: Vestcorp LLC, 623 Eagle Rock Ave Suite 364, West Orange, NJ 07052

### 15. Harry Byrnes
Role: Court-appointed auctioneer. Neglected security of the property, leading to thefts.

Legal Exposure: Breach of fiduciary duty, enabling burglary, aiding fraudulent conveyance.
Address: A.J. Willner Auctions, 81 Hamburg Turnpike, Riverdale, NJ 07457

**16. Ernest Rucker, Jr.**
Role: Occupied Garsia family apartment post-eviction without legal authority. Filmed stealing personal belongings and smoking marijuana.
Legal Exposure: Trespass, burglary, theft.
Address: 74 Chestnut St, Paterson, NJ 07501

**17. NAI James E. Hanson**
Role: Broker for multiple transactions, including those tied to Charles Florio and Procida.
Legal Exposure: Conspiracy, fraudulent transfer facilitation.
Address: 195 North Street, Suite 100, Teterboro, NJ 07608

**18. Patricia A. Staiano, Esq.**
Role: Counsel to the Trustee. Suppressed debtor speech, enabled violations of due process, and facilitated unlawful actions under color of law.
Legal Exposure: Civil rights violations, aiding and abetting fraud, RICO conspiracy.
Address: Hellring Lindeman Goldstein & Siegal LLP, 103 Eisenhower Parkway, Roseland, NJ 07068

**19. John O'Boyle, Esq.**
Role: Debtor's original counsel. Failed to act in debtor's interest, ignored counterclaim opportunities, transmitted threats verbatim, and abandoned representation during crisis.
Legal Exposure: Legal malpractice, breach of fiduciary duty, aiding and abetting fraud.
Address: Norgaard, O'Boyle & Hannon, 184 Grand Avenue, Englewood, NJ 07631

**20. Charles Florio**
Role: Procida associate; shares broker network, developer connections. Benefited from system of distressed property takeovers.
Legal Exposure: RICO conspiracy, unjust enrichment.
Address: 175 Broadway, Paterson, NJ 07505

**21. Andrew Kovar**
Role: Brother of Shari Hartstein; named as part of Procida takeover team.
Legal Exposure: Conflict of interest, RICO conspiracy.
Address: 181 Hudson Ave, Tenafly, NJ 07670

**22. Mario Procida**
Role: Billy Procida's brother. Believed to be behind "468 Totowa Owner LLC."
Legal Exposure: RICO enterprise, unjust enrichment, money laundering.
Address: 456 E. 173rd Street, Bronx, NY 10457

**23. Peter Procida**
Role: Son of Mario Procida and nephew of Billy Procida. Officer in affiliated LLCs.

Legal Exposure: RICO conspiracy, unjust enrichment.
Address: 456 E. 173rd Street, Bronx, NY 10457

---

**JOHN AND JANE DOES (1–50)**
The Plaintiff reserves the right to amend this complaint to name additional defendants as
discovery and investigative efforts proceed. These include but are not limited to:

- **Financial backers** of the enterprise including individual investors in 100 Mile Fund and
  Spruce Street Partners
- **Shill buyers** of transferred property assets
- **Professional enablers**, including attorneys, accountants, and appraisers knowingly
  facilitating fraud
- **Local and state political figures** complicit in enabling the enterprise through silence or
  action
- **Government agencies**, including NJEDA and related directors, who participated in
  approving or endorsing actions connected to fraudulent transfers
- **Community organizations and nonprofits**, including NJCDC executives and board
  members, who may have played a role in legitimizing or facilitating asset transfers
- **Social media platforms** or agents responsible for suppressing Plaintiff's speech during
  critical phases of whistleblower activity (including the takedown of protected Instagram
  content)

# EXHIBIT B

**Whistleblower Complaint Filed June 17, 2025**

This is the full federal whistleblower complaint submitted by Plaintiff to the U.S. Trustee. It was stamped received by the U.S. Bankruptcy Court and outlines a broad pattern of systemic misconduct, fraudulent transfers, and fiduciary breaches by the Chapter 11 Trustee and co-conspirators.

Martha Hildebrandt
Assistant United States Trustee, Region 3
Office of the United States Trustee
qne  Newark Center
1085 Raymond Boulevard, Suite 2100
Newark, NJ 07102

Date: June 17, 2025

RE: URGENT WHISTLEBLOWER  COMPLAINT - Trustee Misconduct & Bankruptcy Fraud
Case: Great Falls Industrial Park, Inc. (Case No. [Insert if known])
Trustee: Eric R. Perkins, Becker LLC

Dear Ms. Hildebrandt:

I am submitting this urgent whistleblower complaint documenting systematic abuse of
bankruptcy process, constitutional violations, and coordinated fraud involving Chapter 11
Trustee Eric R. Perkins and multiple co-conspirators.

IMMEDIATE CONCERNS:

- **Active retaliation:** Sills Cummis & Gross is currently seeking contempt charges against
  me for exposing this scheme
- **Ongoing harm:** Over 100 wedding clients remain without recourse or refunds
- **Constitutional violations:** Unlawful eviction, mail tampering, suppression of speech
- **Fiduciary breach:** Trustee enabled theft while billing estate for suppression activities

KEY EVIDENCE INCLUDES:

- Video footage of trustee team observing ransacked premises and failing to act
- Email proof of social media suppression by court officers
- Documentation of conflicts of interest (trustee's accountant's brother named as Procida
  replacement)
- Financial records showing $725,000+ personal investment by non-owner family
  members

ACTIVE RETALIATION IN PROGRESS: Attached as Exhibit A is evidence of active retaliation
a motion filed May 28, 2025, seeking my arrest for failing to produce records that were stolen or
destroyed by the very parties I am exposing. Complete exhibit packet to follow within 5 business
days.

EXHIBITS ATTACHED: Whistleblower Complaint (24 pages), Exhibit A-Active Retaliation
Evidence (19 pages)

**WHISTLEBLOWER COMPLAINT**

**Filed by:** David J. Garsia
**Pro Se** — On behalf of himself, his family, and over 100 harmed parties
**Submitted to:** UNITED STATES TRUSTEE — OFFICE OF ENFORCEMENT
**Date:** June 17, 2025

**TABLE OF CONTENTS**

- **SECTION 1:** OVERVIEW
- **SECTION 2:** THE SCHEME AND ITS ARCHITECTS
- **SECTION 3:** Harm to the Public — The Wedding Clients Betrayed
- **SECTION 4:** Control and Collusion — The Role of the Trustee and His Assigns
- **SECTION 5:** Legal Misconduct and Institutional Failure
- **SECTION 6:** Legacy Theft and Irreparable Harm to the Garsia Family
- **SECTION 7:** The Human Toll and Public Harm
- **SECTION 8:** The Cover-Up and Complicity
- **SECTION 9:** The Pattern, the Precedent, and the Silencing
- **SECTION 10:** The Ask — What Justice Requires

**SECTION 1: OVERVIEW**

This whistleblower complaint exposes a coordinated "loan-to-own" scheme perpetrated by private financier William "Billy" Procida and the 100 Mile Fund, enabled by the law firm Sills Cummis & Gross, and executed with the complicity of a U.S. Bankruptcy Trustee and his assigns. What began as a search for a real estate loan became a methodical plan to seize two properties—468 Totowa Avenue and the Great Falls Industrial Park (known as The Art Factory)—by weaponizing foreclosure, abusing bankruptcy procedure, and overriding basic civil and constitutional rights.

But this is not just about a predatory lender. It is about a systemic betrayal by officers of the court—including a trustee who illegally evicted a family, failed to protect estate property, sanctioned burglary, and ultimately handed personal legal and financial records and assets to the adversary—and about a law firm that not only engineered and concealed the scheme but actively effected it and profited from its results.

**A Partnership Built to Fail**

In 2018, our family entered into what we believed was a growth partnership with Procida Funding. With over $12 million in appraised equity and two properties pledged as collateral, the loan was sound and secure. But behind closed doors, Procida and his agents had a different intention: take control of the

properties and businesses, collapse the borrower, and absorb the assets at discount—without paying for them.

Promises of working capital, estate buyout support, and mentorship—offered as part of a larger refinancing and stabilization strategy—were quickly broken. Emails between our attorney and financial advisors show that post-closing support and takeout financing were planned, but never materialized. Instead, interest rates ballooned to a predatory 24-34%, required disbursements were withheld, and financial pressure was deliberately applied. Then, in the middle of the second wave of COVID-era shutdowns, the legal strategy for extra-legal transfer took shape.

**The Trustee's Role: From Fiduciary to Facilitator**

When we filed for Chapter 11 in August 2024, it was a desperate attempt to protect over 150 upcoming weddings, preserve business value, and regain control from a fraudulent lender. But instead of the protection intended by bankruptcy law, we encountered targeted eviction, loss of access, and silencing.

**Within days of conversion to Chapter 7:**

- We were evicted from our legal residence without court order or notice—in direct violation of New Jersey's Anti-Eviction Act and constitutional due process.

- We were barred from retrieving personal or corporate property, including IRS documents, passports, contracts, and records.

- Our office and apartment were burglarized—captured on video—even after we warned both the Trustee's counsel and the court-appointed auctioneer, Harry Byrnes, in writing.

- The property was handed to an unlicensed "security" hire—Ernest Rucker, an unemployed former Paterson zoning officer—who moved into our private home. He burglarized our residence, destroyed our security cameras, used our personal belongings, slept in our beds, showered in our bathrooms, and was recorded smoking marijuana in our living space. He also moved sensitive documents—including estate mail, contracts, and legal filings—out of our apartment and into public areas.

Even as we were barred from the property on the false premise of insurance restrictions, individuals aligned with Procida—including onsite caterer Ameer Natson—were granted ongoing access and allowed to continue business operations. Video evidence confirms this. When asked why Natson was permitted to remain, auctioneer Byrnes replied, "Billy said he's okay."

Video footage taken via Meta smart glasses on November 5 and again on November 15 shows Trustee Eric Perkins, his accountant Shari Hartstein, and Trustee's counsel Patricia A. Staiano surveying our looted office, ransacked home, and legal mail scattered across the premises. Despite this direct knowledge, they failed to secure the records—and later transferred the property, mail, documents, furniture, and personal effects to Procida.

This is not a clerical lapse. It is a profound breach of fiduciary duty under 11 U.S.C. § 704, a violation of federal mail law under 18 U.S.C. § 1708, and a denial of due process under the Fifth and Fourteenth Amendments.

**Sills Cummis & Gross: Legal Architects of the Seizure**

Sills Cummis was not just outside counsel—they were the engine of the takeover. Despite full knowledge that our original loan was secured by two properties with over $12 million in equity:

- They demanded personal guarantees from us—even though we held no ownership interest in the businesses or properties—without adjusting those guarantees when 40% of the collateral was stripped away in a fraudulent transfer.

- They were copied on threatening and coercive emails from their client and proceeded with the plan.

- They orchestrated the fraudulent sale of 468 Totowa, ignoring other bids and using insider entities to simulate an arms-length transaction.

- They sued us on the personal guarantees, secured default judgments amid foreclosure chaos, and used those inflated claims to support a false credit bid.

- They misrepresented to the Bankruptcy Court that the entity receiving Great Falls was "wholly owned" by the 100 Mile Fund—when in fact Secretary of State records confirm it is owned by a direct competitor.

This is not aggressive litigation. It is fraud cloaked in legal procedure. And it calls into question the integrity of every officer of the court involved.

**What Was Lost—and Why It Matters**

**Because of this orchestrated collapse:**

- Over 100 couples lost their weddings and deposits.

- Our family was evicted, burglarized, and erased.

- Longtime employees—some with over 40 years of service—were immediately left without work.

- Vendors and contractors went unpaid.

- The Paterson community lost one of its most iconic redevelopment anchors.

**This complaint is submitted not merely for our own restitution, but for:**

- The over 100 couples whose once-in-a-lifetime events were destroyed without remedy.

- The small businesses who trusted a project that was never meant to survive.

- The people of Paterson, who watched a city-led revitalization project become a cautionary tale of institutional betrayal.

- And every future entrepreneur who may now think twice before trusting the courts, lenders, or lawyers sworn to protect them.

What happened at The Art Factory was not a business failure. It was a failure of law, a collapse of fiduciary trust, and a systemic abuse of power.

**It is time for it to be investigated.**

## SECTION 2: THE SCHEME AND ITS ARCHITECTS

This was not a routine foreclosure. It was a calculated, step-by-step acquisition by deception—a textbook case of predatory lending and insider asset seizure, designed and executed by seasoned operators who presented themselves as allies, only to become the architects of financial, reputational, and operational ruin.

### Core Actors and Entities

**William "Billy" Procida** — President of Procida Funding and founder of the 100 Mile Fund. Marketed himself as a "rescuer" of distressed businesses while running a covert loan-to-own pipeline. Ultimately seized both Garsia family properties through manipulated foreclosure, misleading bids, bankruptcy subversion, and an insider network of collaborators. Publicly styled as a visionary investor, Procida privately dismantled the very businesses he claimed to support—then redirected their value to his own family and fund.

**Derek Weissman** — Partner and Head of Asset Management at Procida Funding. Operated as Procida's enforcer, coordinating site access, tenant deception, and post-transfer logistics. Weissman ordered valuations, dictated sale terms, and liaised directly with receivers, auctioneers, and future owners pre-selected by Procida.

**Sills Cummis & Gross P.C.** — The legal engine behind the scheme. Far from neutral counsel, they aggressively enabled manipulated foreclosures, advanced falsehoods in court, and crafted mechanisms to insulate insider transfers. Despite fiduciary obligations, they protected Procida's interests—not the estate's creditors—and targeted the Garsias with suppression tactics designed to silence and discredit them.

**Shari Hartstein (Vestcorp)** — Appointed by the trustee to secure financial records and conduct estate accounting. Instead, she withheld critical documents—including tax records, legal files, and Donata's passport—and failed to disclose a glaring conflict: her brother, Andrew Kovar, had been named by Procida as part of the planned takeover team. Her neutrality was irreparably compromised, and the integrity of all records in her custody is now in question.

**Eric R. Perkins (Becker LLC), Bankruptcy Trustee, and Assigns** — Tasked with preserving value for creditors, the trustee's office instead acted in concert with Procida. They shut down legitimate business operations, ignored over 100 harmed wedding clients, blocked access to records, and worked to suppress the Garsias' public warnings. Assigned agents like Harry Byrnes—hired under the guise of "security"—enabled looting, destruction, and invasion of privacy. Byrnes hired others to move into David and Donata's private residence, used their clothing and belongings, and allowed data and property theft on a massive scale.

*[Additional parties including Steven and Bobby Brown Plofker, David Placek, Victor Herlinsky, and NJCDC-affiliated board members will be addressed in forthcoming adversary proceedings. Their affiliations with Gensler, the NJEDA, and Cory Booker's donor network suggest a broader political and financial entanglement that underpinned and protected the fraudulent transfer.]*

### Modus Operandi

The blueprint was repeatable and disciplined—engineered to manufacture dependency, trigger default, and quietly capture high-value assets without fair bidding or public scrutiny.

**1. Position as Savior**
Procida styled himself as a mentor and financial partner, promising capital, guidance, and long-term strategic support. Borrowers were assured they were "on his team" and encouraged to share everything—plans, vendors, passwords, and projections.

**2. Pull the Rug**
Once dependence was established, key capital was abruptly denied—particularly estate buyout funds. This destabilized the family business from within, increasing internal pressure and weakening external leverage.

**3. Assume Financial Control**
The Garsias were steered to use banks, vendors, and accountants aligned with Procida—entities that were, in one way or another, financially entangled with him. Though he may not have held formal control of accounts, he had de facto control through these relationships. This structured full dependency, ensuring all financial reporting flowed through channels he influenced or monitored.

**4. Starve and Threaten**
During COVID—a time when the Garsias were barred by law from operating—they nevertheless honored and rescheduled hundreds of weddings at their own expense, doubling their overhead and sacrificing future revenue for the sake of their clients. Instead of offering relief, Procida exploited the crisis: he increased interest rates to punishing levels—as high as 24-34%—stacked on late fees, and issued constant foreclosure threats. There was no bridge funding, no restructuring, no mercy—only a deliberate effort to rob the Garsias of cash and hope, making refinance impossible and salvation unreachable. This was not hardship—it was a setup. The crisis became his leverage, and the foreclosure his reward. Procida perfected his position to seize the assets, while his investors profited directly from the fallout. It was a racket—dirty money reaped by investor families at the expense of the Garsias' own children.

**5. Stage the Takeover**
Due to Procida's manufactured dependency and unconscionable actions, assets were seized under the guise of arms-length market transactions. Offers from legitimate buyers were intentionally suppressed, while handpicked insiders were disguised as independent purchasers. Misleading documents masked the relationships between lender and buyer.

**6. Exploit the Courts**
Legal systems designed to ensure fairness were instead weaponized. Trustees, receivers, and court officers were co-opted or misled. The real goal was never repayment—it was asset seizure, camouflaged as due process.

**The Fraudulent Transfer of 468 Totowa**

Procida orchestrated the transfer of 468 Totowa Avenue to himself using a shill entity. Though "Renard" appeared in early filings, the true buyer at closing was 100 Mile Renard LLC, owned and signed for by Procida himself—tying the fraud directly to the 100 Mile Fund.

Despite an internal listing at $9,750,000—ordered by Weissman—the property was fraudulently transferred for less than half that value, using "credit" conjured and controlled by Procida. No money

was paid to the owner. This was no sale—it was a paper sleight of hand, by which a family property of 40 years was taken overnight. In fact, according to Procida's own accounting tricks, the Garsias owed him more than they did two years earlier, despite now having one less property.

Ownership has since been transferred from 100 Mile Renard to 468 Totowa Owner LLC, a company controlled by Mario and Peter Procida, Billy's brother and son. The original "buyer," Dino Tomassini, was a placeholder and agent of fraud. Tomassini and Renard will be named directly in forthcoming suits.

Investors and their families in the 100 Mile Fund—such as Ron Simoncini, a New Jersey real estate publicist—were the direct beneficiaries of the fraud. In a 2023 interview, Simoncini described Procida's strategy with remarkable candor:

"The first guy in is where the real margins are."

That "first guy" was Procida—posing as a financier, but quietly staging a handoff to his inner circle. His investors' children went to private schools funded by money stolen from the Garsias' children. It was a racket—a mobster family playbook dressed in LLCs and court orders.

**The Setup for Great Falls Industrial Park (The Art Factory)**

With Totowa secured, the Garsias' ability to obtain replacement financing evaporated. Procida now turned to their more valuable flagship: The Art Factory at Great Falls.

In a news article, he called it "the linchpin" of Paterson and predicted:

"Somebody with a lot of patience will make a lot of money on that property."

He was determined that somebody would be him.

Behind the scenes, he inflated penalties, manufactured defaults, and rejected all reasonable restructuring proposals—while knowing he had already stripped 40% of the collateral by stealing 468 Totowa. While pretending to act as a partner, he instructed the Garsias to prepare and turn over financial projections, client calendars, and engage turnaround consultant Fred Luberto, who developed a full recovery plan.

Procida ghosted him. Internally, he told his team:

"We're going to take the building."

**The Bankruptcy Weapon**

On the eve of a rent receiver motion based on **fabricated claims—including phantom tenants**—the Garsias filed Chapter 11 in good faith to protect their business and booked weddings.

Their attorney, John O'Boyle, relayed explicit assurances from the trustee's office: a $50,000 payment to the 100 Mile Fund on September 9, 2024, was necessary to allow the Garsias to continue operations, manage estate funds, and protect all scheduled events. The payment was made.

**It was a lie.**

Just six days after, Donata—still trusting those assurances—used her final personal $9,000 on September 18 to pay a caterer to ensure a bride's wedding, the family was forcibly evicted, without warning.

Instead of delivering her weddings, Donata was personally destroyed by forced eviction, stripped of income, and subjected to hires of the trustee occupying her home like a vanquishing army—in violation of the Third Amendment to the U.S. Constitution.

The trustee's office refused the Garsias' reentry, citing "lack of insurance," yet permitted untrained, uninsured agents to move into her home, wear their clothes, use their children's belongings, and sanction systemic looting of private property and estate files in violation of the Fourth and Fourteenth Amendments to the U.S. Constitution.

Essential legal records and U.S. mail were never returned. As of this filing, the widow of owner David E. Garsia cannot file 2023 or 2024 taxes, and stands to lose a $60,000 IRS refund—while the trustee and his agents remain immune from consequence.

This was not bankruptcy protection.

It was bankruptcy conversion—a coordinated operation to erase the rightful owners and deliver the spoils to insiders under the cover of law.


## SECTION 3: HARM TO THE PUBLIC — THE WEDDING CLIENTS BETRAYED

The most tragic and far-reaching consequence of Procida's predatory scheme was not limited to the financial and emotional devastation inflicted on our family—it extended to over **one hundred couples** who had entrusted us with the most important day of their lives.

These were not corporate investors or savvy entrepreneurs. They were teachers, nurses, first responders, veterans, young professionals—people who had scrimped and saved to afford a wedding. Many chose Art Factory because it represented something special: a historic venue reborn through creativity, sweat, and community.

### 3.1 Systematic Deception of the Public

While Procida, Weissman, and their legal agents plotted foreclosure and takeover behind the scenes, they **encouraged us to keep accepting bookings and deposits**—often under the pretense of cooperation and long-term partnership. Even after filing foreclosure in February 2024, they instructed their handpicked advisor (Fred Luberto) to continue working with us to create a plan to "save the business." This false hope **ensured ongoing cashflow** into a system they knew they were actively dismantling.

Couples continued booking weddings. Deposits continued to be accepted. Many booked after the foreclosure action was already filed.

This was not mere negligence. It was a calculated scheme to **milk the business for its final earnings**, while manipulating optics to portray us as mismanagers and themselves as responsible stewards.

### 3.2 The Trustee's Role in Final Betrayal

After the bankruptcy filing in August 2024—forced upon us by the risk of losing these very weddings— the appointed trustee, rather than acting in the best interest of clients and preserving business value, aligned his actions with the lender's private agenda. These included:

- **Forcing a sudden business shutdown** in September 2024, canceling dozens of weddings scheduled just days away.

- **Evicting my wife and children from our home** on the property, with no warning, recourse, or ability to retrieve personal effects.

- **Turning over security of the venue to an unqualified and hostile third party**—a zoning officer, who proceeded to move into our residence and ransack our belongings, documented on security footage.

- **Allowing selected tenants favored by Procida to remain and operate**, while barring us from entry.

- **Failing to secure or return critical business and personal documents**, despite repeated requests—jeopardizing our ability to respond to IRS audits and maintain legal compliance.

Most egregiously, the trustee **took no meaningful steps to preserve the weddings**, issue refunds, or notify clients in a timely manner. As a result:

- Over 100 couples were financially and emotionally devastated.

- Many lost thousands of dollars with **no refunds**.

- Some learned of their canceled wedding just days before their event date.

- Others were forced to scramble for last-minute alternatives at great personal cost.

**3.3 Misrepresentation and Media Spin**

As panic spread among the wedding clients, Procida and his team orchestrated a **media narrative blaming us** for the collapse—despite the fact that:

- We had invested our family's last resources into the venue, even during bankruptcy.

- We fulfilled over 140 rescheduled weddings **during COVID**, without charge, to protect clients.

- We never missed a single wedding until we were forcibly removed.

This spin campaign allowed Procida and the trustee's allies to shield themselves from scrutiny while using client outrage to justify their own seizure of assets and suppression of our rights.

**3.4 Broader Public Harm**

This scandal extends beyond wedding clients. It includes:

- **Vendors who were not paid** because of the shutdown.

- **Employees and contractors who lost work** during peak season.

- **The Paterson community**, which saw the gutting of one of its most iconic adaptive reuse projects.

- **Historic preservation efforts**, which were stalled or reversed as creative stewardship gave way to demolition and destruction.

These harms are not speculative. They are documented in letters, emails, bankruptcy filings, security footage, and creditor claims.

## SECTION 4: CONTROL AND COLLUSION — THE ROLE OF THE TRUSTEE AND HIS ASSIGNS

The bankruptcy system is designed to protect creditors, preserve value, and administer fair process—not to facilitate the strategic takeover of businesses by the very parties that caused their collapse. Yet in our case, the trustee and his agents abandoned their neutral role and became co-conspirators in the scheme to weaponize the process they were charged to oversee.

### 4.1 From Oversight to Obstruction

Appointed to manage the Chapter 11 case after we were forced to file in August 2024, the trustee—Eric R. Perkins—quickly revealed his alignment with the secured creditor: 100 Mile Fund and William "Billy" Procida. Rather than working to preserve the going concern or ensure an orderly wind-down that honored pre-paid weddings, the trustee:

- Shut the business down mid-season, canceling events that were already scheduled and paid for.

- Denied us entry to the premises—even when décor and preparations were already set up for upcoming weddings.

- Instructed my wife to remove social media posts critical of Procida—an unconstitutional overreach with no legal basis.

- Allowed Procida's associates and favored tenants to remain in operation, while barring the very people who built the business from accessing it.

*[It is worth noting: the trustee never once contacted us to get our side of the story.]*

This was not impartial oversight. It was deliberate orchestration.

### 4.2 Allowing Theft, Trespass, and Sabotage

Following our forced removal, the trustee assigned site "security" not to a bonded firm, but to a former local zoning officer—a municipal insider with no qualifications—who promptly moved into our residence on the property with his girlfriend. They slept in our bed, wore our clothes, used our belongings, smoked marijuana indoors, and were recorded on camera stealing our possessions.

**Security footage and eyewitness documentation confirm the ransacking of:**

- Our children's rooms, where clothing, passports, and birth certificates disappeared.

- Our business offices, where critical files and documents were removed.

- Storage units, from which cash, equipment, and legal documentation were stolen.

- Common areas, where furniture, audiovisual gear, computers, kitchen inventory, and production equipment vanished.

These were not just property losses. This was personal, financial, and legal sabotage. These were the records required for IRS compliance, legal defense, and estate administration. Despite repeated pleas to the trustee's office and our bankruptcy counsel (Norgaard, O'Boyle & Hannon), no investigation occurred. The site remained unsecured. The damage was never remediated.

### 4.3 The Shari Hartstein Conflict

The trustee appointed Shari Hartstein of Vestcorp as the estate's accountant. Her job was to safeguard financial records and ensure accurate documentation. Instead, she:

- Took possession of a select portion of our handwritten ledgers, business records, and personal legal documents in unmarked boxes, without inventory, archive, or chain of custody.

- Left full file cabinets of records behind, which were later handed over to Procida when the trustee gave him the buildings.

- As a result, the origin and integrity of all documents are now irreparably compromised—no party can rely on any record as complete or authoritative.

- Failed to return Donata Garsia's passport and vital family documents.

- Expressed concern in private about Procida's usurious 24-34% interest rates, yet took no corrective action.

- Discovered during a November 5 walkthrough that her own brother, Andrew Kovar, was listed by Procida in takeover documents as a proposed replacement team member—and still did not recuse herself.

This conflict of interest was glaring. Yet Hartstein maintained control over sensitive financial records, many of which remain inaccessible. As a result, the widow of the company's founder has been unable to file personal or corporate tax returns for 2023 and 2024—forfeiting an estimated $60,000+ in refunds and placing the estate in legal and financial jeopardy. The bankruptcy estate's transparency is permanently compromised.

### 4.4 Denying the Rights of Creditors

Most of the couples whose weddings were canceled are now legally considered creditors in the bankruptcy case. The trustee has:

- Failed to affirm, prioritize, or meaningfully resolve their claims.

- Offered no coherent plan for refunds or restitution.

- Allowed the secured lender to credit-bid on assets built by those very clients—using fraudulently inflated valuations that were never independently verified.

Rather than protecting the estate or the public, the trustee protected a predatory insider, enabling him to become a shadow owner through procedural manipulation, forced evictions, and public scapegoating.

### 4.5 Weaponizing the Bankruptcy Process

Just as Procida manipulated private lending laws to force foreclosure under the guise of partnership, the bankruptcy process was likewise inverted. Instead of shielding value and ensuring fairness, it was used to:

- Execute a quiet seizure of property—without a traditional sale.

- Evict dissenting voices and remove key witnesses.

- Create a false narrative of chaos and noncompliance to justify trustee intervention.

- Convert the outrage of harmed clients into cover for the actual perpetrators.

What should have been a protective, court-supervised rehabilitation became a covert acquisition tool—with the trustee as midwife to the takeover.

*[The next section will detail how the assets were ultimately transferred to a so-called "wholly owned subsidiary" of the secured lender—a claim that turned out to be materially false.]*


## SECTION 5: LEGAL MISCONDUCT AND INSTITUTIONAL FAILURE

The scheme carried out against Great Falls Industrial Park, Inc. and the Garsia family did not succeed because of financial default—it succeeded because of a collapse in legal integrity. The attorneys who should have acted as safeguards—whether as officers of the court, fiduciaries to the estate, or counsel to the debtors—instead became enablers of systemic abuse. The most egregious actors among them include Sills Cummis & Gross, the trustee's legal team, and debtor's counsel John O'Boyle.

These were not honest brokers in a complex case. These were legal professionals who tilted the system, silenced the victims, and cleared the path for a fraudulent takeover.

### 5.1 Sills Cummis & Gross: The Legal Engineers of the Seizure

As counsel for the 100 Mile Fund, Sills Cummis & Gross was not a neutral advocate. They acted as strategic architects of a predatory scheme, enabling their client to seize two properties—one of them under the cover of bankruptcy—through fabricated debt figures, misrepresented ownership, and credit bid abuse.

Despite the original loan being secured by more than $12 million in equity and two fully collateralized properties, Sills Cummis:

- **Demanded personal guarantees** from David and Donata Garsia—despite the fact that neither had any ownership interest in the properties or the businesses. These guarantees were structured to ensure the Garsias remained committed to operations while being left exposed to personal liability.

- **Refused to adjust the guarantees** after 40% of the collateral (468 Totowa) was stripped and fraudulently transferred—thus eliminating any possibility of refinance, as acknowledged even by Procida at closing. The removal of that collateral baked failure into the deal from the outset.

- **Filed suit on those personal guarantees** during peak foreclosure chaos—when the Garsias were running the business full-time—and secured a default judgment, not by merit, but by engineering a legal storm in which they knew the defendants could not respond.

- **Oversaw the transfer of 468 Totowa** to an insider entity—100 Mile Renard Totowa, LLC—under the false appearance of a market sale. Because Procida and his agents handled the brokers, showings, negotiations, and disclosures, no independent oversight or transparency was ever possible. Offers from other parties, if they existed, were suppressed or ignored.

- **Used the inflated judgment** from that default to justify a fraudulent credit bid on The Art Factory, again claiming fabricated figures based on punitive interest and coercive leverage.

- **Misrepresented to the bankruptcy court** that the new ownership entity receiving Great Falls was "wholly owned" by the 100 Mile Fund—when, in fact, Secretary of State records confirm it is owned by a direct Art Factory competitor.

Sills Cummis had full access to the data: emails, creditor communications, appraisals, entity structures, and insider threats. They knew the truth. And they moved forward anyway.

**This was not legal representation. It was legal laundering of theft.**

### 5.2 A Pattern of Procedural Ambush

At every procedural juncture, the legal team deployed court filings not as instruments of remedy, but as weapons of disorientation and control:

- They filed foreclosure while simultaneously pretending to pursue a workout with Fred Luberto.

- They delivered motions on timelines so short they effectively barred any response—denying the debtors due process.

- They filed conflicting pleadings in state court, federal court, and bankruptcy court, fracturing the defense landscape and stalling momentum.

None of this was about justice. It was about exhaustion. Every filing bought them more chaos and more leverage.

### 5.3 Trustee's Counsel: From Passive Oversight to Active Enablement

Rather than enforce fiduciary standards, the Trustee's legal team parroted the lender's agenda. Under their watch:

- **No investigation was made** into the clear conflict of interest posed by the Trustee's accountant, Shari Hartstein—whose brother was a named agent in Procida's takeover team.

- **No action was taken** after video evidence was submitted showing the looting of the office, apartment, and mail—despite multiple email warnings from the Garsias, and even a walkthrough onsite with the Trustee himself.

- **Trustee counsel demanded the removal** of all social media posts that explained the truth to the clients—an unconstitutional overreach with no basis in bankruptcy law.

- **They failed to protect 100+ priority wedding clients**—never filing a motion, never pursuing recovery, never even notifying most of them that their event was canceled until it was too late.

- **They failed to secure, recover, or catalog** estate assets, financial documents, or U.S. mail, much of which was ultimately turned over to the opposing party.

This was not negligence. It was orchestration.

### 5.4 Legal Representation Collapsed

Debtor's counsel, John O'Boyle of Norgaard O'Boyle & Hannon, was retained to represent the estate. Instead, he became a passive channel through which opposing counsel dictated outcomes.

**O'Boyle failed to:**

- **Oppose the illegal eviction** of the debtors from their legal residence—even though Donata and the children had lived there for years under a lawful certificate of occupancy.

- **File any motion for injunctive relief** after the theft of IRS documents, contracts, or corporate records.

- **Protect the family's First Amendment rights,** instead transmitting the opposition's threats verbatim and telling Donata to "pull down the social media posts RIGHT NOW."

- **File a counterclaim or object** to the fraudulent transfer of 468 Totowa—despite repeated pleas from David Garsia, who wrote in an email that the Governor's office was ready to get involved.

In response, O'Boyle dismissed the request outright, stating:

"I don't know what you are talking about and I am not filing anything."

That email is now Exhibit C-1.

O'Boyle failed his client. And through his failure, the Garsias lost everything.

### 5.5 Nullification of Victim Voices

Over 100 couples had signed contracts, paid deposits, and planned life-defining events at The Art Factory. Dozens of vendors depended on this business. Employees had worked there for decades. And all of them were erased.

Despite creditor filings and repeated public outcry:

- No plan for restitution was ever proposed.

- No preservation motion was filed.

- No attempt was made to contact or meaningfully involve these families in court proceedings.

The Trustee, debtor's counsel, and Sills Cummis had every opportunity to explain what was happening. Instead, they blamed the victims—and buried the truth.

### 5.6 A Collapse of Institutional Duty

What happened was not a lapse. It was a coordinated breakdown of every system designed to uphold equity:

- The Trustee violated his fiduciary duties, failed to safeguard estate assets, and facilitated constitutional violations.

- Sills Cummis engineered a legal fiction—fabricating bids, laundering ownership, and misrepresenting material facts.

- The Trustee's counsel enabled this at every step.

- Debtor's counsel ignored theft, eviction, coercion, and fraud—and then blamed the victims.

What happened at The Art Factory was not business failure. It was the collapse of law itself.


**SECTION 6: LEGACY THEFT AND IRREPARABLE HARM TO THE GARSIA FAMILY**

While the Procida team has made headlines touting a visionary future for the Art Factory, the truth is darker and deeply unjust: they are profiting from the legacy, labor, and life savings of a family they erased—while the very individuals entrusted to protect the estate enabled it.

**6.1 Personal Contributions and Collateral Loss**

Neither Donata Garsia nor David Garsia held a legal interest in the Art Factory at the time of bankruptcy. Yet Donata personally invested over **$725,872.49** into the business from her own savings and loans secured by the marital home. She had no ownership interest—yet risked everything. That home is now in foreclosure—not due to mismanagement, but because the trustee abruptly terminated all income-producing operations and froze all business activity, leaving the Garsias without recourse or income.

**These funds were not speculative investments. They were used to:**

- Complete wedding events that Procida and the trustee shut down mid-stream

- Honor commitments to hundreds of film clients, artists, and vendors

- Maintain brand continuity and advertising

- Sustain payroll and equipment

- Purchase décor, furnishings, lighting, infrastructure, and more

The assets purchased with Donata's funds are now in the possession of the very parties that forced her family out.

**6.2 Destruction and Negligence by Trustee and Agents**

Despite repeated documented notice that the property contained sensitive financial and legal records, private mail, passports, birth certificates, and irreplaceable family items, the trustee and his assigns failed to secure the premises. Instead:

- **Looters**—with tacit approval or instruction from the trustee's auctioneer and agents—entered Donata and David's residence, stole belongings, and moved in with impunity.

- **Ernest Rucker**, a former zoning officer hired by the trustee, was captured on camera destroying security equipment, sleeping in their beds, using their shower, and smoking marijuana inside their home.

- **Private correspondence** between Donata and her attorneys concerning litigation against Procida was found strewn in public hallways, alongside Garsia children's schoolwork and legal documents.

- **U.S. mail was opened, exposed, or discarded**—a potential federal offense under 18 U.S.C. § 1708. *[This may warrant inquiry by the U.S. Postal Inspector General.]*

Firsthand video evidence from Meta smart glasses worn by David Garsia on November 5 and 15, 2024—taken with the Trustee and his legal team onsite—captured this destruction in real time.

Despite this, the Trustee only collected a fraction of the remaining records—and ultimately turned over all personal effects, documents, and equipment to Billy Procida.

This was not passive oversight. It was active breach of fiduciary duty under 11 U.S.C. § 704 and a violation of constitutional due process.

### 6.3 Intellectual Theft and Repackaging of the Garsias' Work

On September 27, 2024, under legal pressure, Donata and David were directed by Trustee's counsel to submit:

- The full architectural plan set for the Great Falls Industrial Park

- Site surveys, zoning documents, insurance materials

- Sprinkler engineering drawings

- 12 years of curated, site-specific development work

Those documents now appear in public photographs from an April 16, 2025 Gensler-led charrette—pinned to walls, presented as "vision" from Billy Procida, and used as the basis for press campaigns and design workshops.

Procida, through his partnership with international firm Gensler, is publicly rebranding the Garsias' approved redevelopment work as his own, gaining accolades and perceived legitimacy from the City and public institutions while denying the authors of the project any credit.

**This is not just misuse of ideas. It is intellectual theft, and it is being conducted in plain view.**

### 6.4 Brand Misappropriation and Public Erasure

While the original creators of the Art Factory have been evicted, defamed, and left in foreclosure, Billy Procida is now being marketed as the visionary founder of the project.

At the April 2025 charrette, Eddie Gonzalez of NJCDC was photographed leaning over the Garsias' original site plans with a pen, much like NJCDC founder Bob Guarasci did at the 2018 neighborhood charrette hosted by Donata.

The narrative being spun in media outlets is one of fresh innovation. In reality, it is:

**"Erase and replace."**

**The Garsias produced:**

- Over 1,200 weddings

- Hundreds of film and television shoots, including Spielberg, Scorsese, Bon Jovi, and Disney

- Free public concerts, art shows, gallery events, and lectures

- Community partnerships with the National Park Service

- Studio space for hundreds of artists and small businesses

- An adaptive reuse model cited nationally for its ingenuity

Yet not only were they excluded from current redevelopment—they were publicly scrubbed from the history of their own creation.

### 6.5 A Final Act of Institutional Betrayal

The Trustee and legal officers did not merely lose control of the estate—they delivered the Garsias' life's work into the hands of their adversary.

**This included:**

- All physical furniture, décor, lighting, and equipment

- Approved architectural and development plans

- Full marketing collateral and brand assets

- Legal documents and casework against Procida

- Planning board approvals and Certificates of Occupancy

- Private communications, trade secrets, and curated event systems

There was no inventory. No protection. No recovery. There was only a handoff.

The result is not only material loss—it is theft of identity and public contribution. The Garsias' four decades of stewardship, recognized by the City and State of New Jersey in 2011, have been rewritten under another man's name.

This is not just a bankruptcy gone wrong. It is legacy theft, institutional betrayal, and the silent obliteration of a family's public contributions.

### SECTION 7: THE HUMAN TOLL AND PUBLIC HARM

While Procida's legal and financial maneuvers were meticulously executed behind the curtain of bankruptcy court, the public-facing consequences were catastrophic. More than 100 couples who had paid in full for weddings at the Art Factory were left devastated—without events, without recourse, and

without explanation. Their once-in-a-lifetime celebrations were wiped out, replaced with confusion, heartbreak, and financial loss.

These were not theoretical injuries. These were real people—teachers, nurses, EMTs, small business owners—who booked their dream weddings years in advance, drawn to the unique industrial aesthetic and reputation painstakingly built by Donata and David Garsia. They paid deposits and balances, bought gowns, sent invitations, booked flights and hotels for guests. They did everything right.

And then the lights were shut off. The locks were changed. The owners disappeared—not because they abandoned the business, but because they were forcibly removed under legal duress. The trustee, aided by Procida and his attorneys, froze operations on the eve of multiple weddings. The reasoning given publicly was a vague, sanitized reference to "bankruptcy proceedings." The truth: it was the next stage in a hostile takeover, and these couples were collateral damage.

Procida's strategy ensured that clients would blame the operators, not the orchestrators. Social media filled with angry reviews and accusations. The press regurgitated soundbites crafted by the very attorneys helping stage the silent coup. Meanwhile, the trustee not only failed to protect the interests of these creditors—he actively worked to nullify their claims. In court filings and informal actions, these aggrieved couples were treated not as victims, but as inconveniences.

One bride, whose wedding was scheduled for the last weekend of September 2024, showed up with guests to find padlocked doors and a security guard who told her it was canceled. No refund. No alternative. No explanation.

Even worse, many of the couples had been encouraged to book in the months and weeks leading up to the shutdown—because Donata and David were still being urged by Procida to "keep the business going," unaware that the plug was about to be pulled. On September 9, just two weeks before the forced eviction, Donata and David paid $50,000 to 100 Mile Fund through the bankruptcy court—a payment arranged by their own attorney, who assured them it would allow continued operations under Chapter 11, including management of wedding funds and access to the property.

Believing these assurances, Donata dipped into her final reserves to personally pay $9,000 to a caterer for a September 18 wedding—just six days before the shutdown. They were told everything was secure, that operations would continue, and that they could deliver on the promises made to their clients. Those assurances turned out to be calculated lies.

This wasn't just breach of contract; it was fraudulent inducement, executed by those holding all the cards, designed to squeeze the last drop of value out of the Garsias before evicting them.

The damage also extended to employees, contractors, and small vendors—florists, caterers, photographers, DJs—many of whom were unpaid for events that never happened. These were local businesses and artists, already reeling from post-COVID economic stress, now stiffed on payments by a venue they trusted because it had operated with integrity for years.

In a cruel twist, the very conditions Procida later cited as justification for foreclosure—missed payments, cash-flow issues, public relations collapse—were in fact the direct result of his own actions. He engineered the financial chokehold, ignited public panic by leaking the bankruptcy, and then used the fallout as retroactive proof that the business "failed."

In truth, it was thriving—until Procida and his assigns weaponized the legal system to dismantle it, one manipulated judgment at a time.


## SECTION 8: THE COVER-UP AND COMPLICITY

What separates this case from a mere bad-faith foreclosure or breach of fiduciary duty is the coordinated effort by multiple parties to conceal wrongdoing, disable internal resistance, and obstruct any chance at recovery for the actual victims. At the center of this cover-up stood not only Billy Procida, but the very legal professionals and court officers sworn to uphold the law—now found enabling its subversion.

### The Trustee's Double Role

The bankruptcy trustee, Eric R. Perkins, was expected to act as a neutral fiduciary safeguarding the interests of the estate and its creditors. Instead, he became—willingly or by capture—an enabler of the takeover. Under the guise of "stabilizing the estate," Perkins stripped the operating family of all access and authority, while granting selective protection and de facto control to those aligned with Procida.

Perkins refused to recognize the obvious fraud and conflicts embedded in the transfer of 468 Totowa, the manipulated valuation, and the contrived foreclosure of Great Falls. Despite repeated, documented requests to preserve client contracts, deliver business records, and allow continuity of operations (which would have preserved weddings and value for *all* stakeholders), he ordered a full cessation of operations with no plan, no inventory, and no transparency.

When Donata and David attempted to post online to reassure booked couples and explain what was happening, Perkins instructed their attorney to order the posts taken down. A direct violation of speech—and a cruel silencing of the only people trying to tell the truth. Rather than investigate a clear RICO pattern of fraudulent transfer and coordinated abuse, the trustee assisted in burying it.

### Shari Hartstein: A Key Conflict

The trustee appointed Shari Hartstein to secure the financials of the business and ensure clean documentation. Instead, she became an active participant in concealing records and enabling obstruction.

Hartstein took possession of the company's handwritten ledgers, payroll records, and all remaining documents—including Donata's passport and personal family papers—and never returned them, despite repeated requests. To this day, no financial records from 2023 or 2024 have been made available to the family, including the widow of the deceased founder who is now unable to complete her IRS filings.

More disturbing still: during a walkthrough, Hartstein encountered her own brother, Andrew Kovar, listed in internal documentation as a Procida co-conspirator and proposed replacement operator. She expressed surprise—but did not recuse herself, did not disclose the conflict to the court, and did not preserve chain-of-custody records.

As a result, there is no reliable inventory, no trustworthy record trail, and no forensic accounting available for any part of the estate. What existed? What disappeared? No one can say. And the only person given custody had a conflict of interest in protecting her own family member.

The result? Total evidentiary compromise. The widow of the founder was told by her accountant she was owed a refund of at least $60,000—but can now file nothing. There is no way to verify what was there, what was taken, or who took it. For a bankruptcy estate operating under federal oversight, this is an egregious violation—implicating both federal insurance and prosecutorial accountability.

## Sills Cummis & Gross: The Legal Architects

Perhaps most chilling was the role of Sills Cummis & Gross, the law firm not merely retained to "clean up" the bankruptcy, but rather Procida's firm of record for years—from inception through foreclosure and into the final hostile transfer. Their involvement was not clerical—it was strategic. They helped design and execute the very structure now under scrutiny.

Sills had full access to every record, every prior agreement, every default notice. They knew the property had millions in equity. They knew the Garsias were forced to personally guarantee loans despite Procida stripping 40% of the collateral. They knew that Procida's entities were gaining control not through default—but through default engineering.

Yet at every turn, they backed Procida's inflated credit bid, crafted from default interest, false penalties, and manipulated balances. They worked to silence the Garsias, eject them without hearing, suppress the client base, and preserve the illusion of lawfulness while executing what amounted to a corporate hijacking.

Multiple outside attorneys—when reviewing the filings—observed: *"No firm would go to this extent unless there was massive money at stake... and unless someone at the top had greenlit these tactics."*

## Suppression by Silence

When David Garsia turned to Norgaard & O'Boyle—the firm retained to protect the estate and represent the family—they vanished. Emails asking for help retrieving IRS documentation, reporting conflict-of-interest breaches, and urging action on fraudulent transfers went unanswered.

This kind of passive suppression is as dangerous as overt misconduct. The legal system depends on checks, balances, and responsive advocates. When every safeguard is either co-opted, complicit, or silent, justice ceases to function.

The result is what we now present: a system in collapse. A record rendered untrustworthy. A widow without filings. Couples without refunds. And a coordinated circle of legal professionals acting not as officers of the court—but as agents of concealment.


## SECTION 9: THE PATTERN, THE PRECEDENT, AND THE SILENCING

What happened to us—David and Donata Garsia—is not an isolated event. It is the product of a repeatable playbook: a "loan-to-own" scheme that disguises predatory acquisition as legal foreclosure and masks corporate theft as fiduciary duty. It is the collision of private profit with public power, enabled by attorneys, trustees, and a system designed to move quickly—often too quickly for justice to catch up.

## A Repeatable Model of Extraction

The architecture of this scheme—credit manipulation, strategic cash starvation, coerced consent, last-minute entity swaps, and manufactured foreclosure—was not accidental. It was premeditated and procedural. It succeeded at 468 Totowa Avenue. It succeeded again at the Great Falls Industrial Park. And if left unchecked, it will succeed again—against the next visionary, small business, or community developer who thinks they've secured a partner, not a predator.

**This was not a loan gone bad. It was a pipeline:**

1. **Appear as Savior:** Present as a rescuer. Offer "capital," "mentorship," and public fanfare.

2. **Starve Post-Closing:** Withhold promised funds, block working capital, refuse estate buyouts.

3. **Apply Pressure:** Inflate receivables, impose usurious interest rates, manufacture defaults.

4. **Engineer the Transfer:** Use insider-controlled entities to "buy" the property via foreclosure or bankruptcy tools.

5. **Shut Down Resistance:** Install a friendly trustee or rent receiver. Evict the founders. Suppress speech. Seize control.

These tactics were not isolated misjudgments. They were interlocking stages in a blueprint of extraction—where profit is maximized not through success, but through failure that can be weaponized.

**Weaponizing the Bankruptcy System**

Bankruptcy law was designed to protect distressed entities—to give them a chance to reorganize, preserve value, and shield assets from aggressive creditors. In our case, it was used as a weapon.

We filed Chapter 11 in good faith to protect over 100 weddings and reorganize after months of financial strangulation. But instead of protection, we were met with systemic betrayal:

- The Trustee shut down the business mid-season, with dozens of weddings scheduled just days away.

- The Trustee refused to recover the fraudulent transfer of 468 Totowa, despite overwhelming evidence of insider collusion.

- The Trustee allowed vandalism and theft to occur at the property while barring us from entry.

- The Trustee's agents and attorneys silenced us, forbade client communication, and punished transparency.

In effect, bankruptcy became a tool of privatized eminent domain. Not to protect, but to erase—to transfer assets under cover of law while silencing the only people willing to tell the truth.

**Suppression of Speech & Coercion of Narrative**

As the bankruptcy unfolded and panic spread among booked couples, our only recourse was public transparency. We used the @artfactorypaterson Instagram account to explain what was happening, reassure clients, and urge them to submit claims.

Instead of support, we were met with legal threats—from the Trustee, the lender's counsel, and even our own attorney, John O'Boyle.

**Takedown Orders & Legal Threats**

On September 21, 2024, S. Jason Teele (Sills Cummis & Gross) emailed:

"I don't think posting libelous, incorrect statements on social media is very helpful."

That same day, O'Boyle replied:

"I advise you to stop having people call Procida and to pull down the social media positions RIGHT NOW."

Subsequent emails from both counsel and the Trustee's office reinforced that no communication beyond an approved blurb would be tolerated. On October 1, 2024, the Trustee's counsel, Justin Baumgartner, ordered:

"All content must be immediately removed... please send access credentials."

Out of fear of court retaliation and loss of remaining weddings, we complied—turning over the account password ("trustee1") and watching as our voice was silenced in real time.

**Trustee Invoicing Confirms Intent**

This wasn't informal pressure. It was billed strategy. The Trustee's invoices from Becker LLC include line items such as:

- "Memo on social media accounts"
- "Phone call re: Art Factory Instagram and Facebook"
- "Review of email from Garsia re: account handoff"

The Trustee billed the very estate owed to devastated couples in order to suppress their only advocates. This is not neutrality. It is complicity in silencing victims.

**Narrative Theft as a Form of Control**

In place of our heartfelt posts, the Trustee issued a sterilized statement instructing couples to file creditor claims and barring entry to the venue. No explanation. No ownership of harm. No mention of Procida or the false foreclosure used to trigger this collapse.

Meanwhile, we received hate mail from brides, threats from vendors, and emotional pleas from families—all because the system erased our side of the story.

**The Broader Impact**

This isn't just about us. It's about who gets heard and who gets erased when power consolidates.

- Over 100 couples lost their dream weddings. Many found out only days before the event.
- Dozens of vendors and contractors were unpaid, ghosted, or pushed into litigation.
- The Paterson community lost a nationally recognized anchor of adaptive reuse and arts revival.

- Future creators, visionaries, and entrepreneurs now see that sweat equity can be stolen—and that truth-tellers will be gagged.

**Why This Must Be Investigated**

The suppression of speech in this case is more than a constitutional violation. It is a tactical maneuver within a broader scheme of asset stripping, debt manipulation, and legal capture. It transformed our warnings into liabilities and our transparency into threats to their plan.

Let the record reflect: our social media was silenced. Our clients were left in the dark. And the machinery of bankruptcy—supposedly designed to protect the public—was leveraged to mute the very people it harmed.


**SECTION 10: THE ASK — WHAT JUSTICE REQUIRES**

This whistleblower complaint is not just a cry for help. It is a demand for accountability, transparency, protection—and immediate intervention.

What happened to us—and to more than 100 families who trusted us—is not an unfortunate business dispute, nor a mere procedural failure. It was a coordinated scheme that weaponized bankruptcy law, enabled fraud, erased lives' work, and devastated the innocent.

We do not bring these claims lightly.
We bring them because we lived through them.
We bring them because hundreds of families were harmed.
We bring them because we know others will be next.

**IMMEDIATE PROTECTION NEEDED — ACTIVE RETALIATION**

**On May 28, 2025, just 21 days before this whistleblower filing, Sills Cummis & Gross filed a motion seeking my arrest and incarceration (Exhibit A). They claim I failed to comply with Information Subpoenas demanding financial records—the very records that were stolen, scattered, or destroyed by the trustee and his agents as documented in this complaint. This motion represents active retaliation designed to silence my protected disclosures and demonstrates why immediate federal protection is essential.**

**The timing of this arrest motion—filed while we prepared this whistleblower complaint—is not coincidental. It is a desperate attempt to intimidate and silence us before federal authorities can investigate the systematic abuse documented herein. This retaliation validates every allegation in this complaint and proves the perpetrators will stop at nothing to avoid accountability.**

**What We Are Asking For:**

**Immediate Investigation by the Office of the United States Trustee**

We request urgent review of the conduct and decisions of Chapter 11 trustee Eric R. Perkins and his assigns, including:

- Their failure to preserve estate value,

- Their violations of state and federal law and of the constitutional rights of the Garsia family,

- Their refusal to recover fraudulent transfers (including 468 Totowa),

- Their suppression of creditor voices—particularly the wedding clients,

- And their enablement of the very party—Billy Procida—whose predatory actions necessitated bankruptcy in the first place.

**Referral to Appropriate Oversight and Enforcement Agencies**

This complaint must be escalated to relevant authorities for immediate review, including:

- The U.S. Attorney's Office for the District of New Jersey, for potential civil and criminal misconduct,

- The Securities and Exchange Commission, for conduct involving 100 Mile REIT and affiliated financial instruments,

- Appropriate state bar associations and professional licensing boards overseeing attorneys, accountants, and officers of the court named in this complaint.

**Reversal of the Fraudulent Transfer of 468 Totowa Avenue**

We request that the U.S. Trustee and/or Bankruptcy Court re-examine the 2021 transfer of 468 Totowa Avenue to "100 Mile Renard Totowa LLC"—a shill entity used by Procida to take control of the building and collapse our business.

This transfer was not merely deceptive; it was the first domino in a calculated sequence of harm:

- It severed our access to key collateral,

- It eliminated our ability to refinance,

- It destabilized our business and precipitated a contrived financial crisis,

- And it enabled every subsequent act: the fraudulent credit bid, the personal lawsuit against us, the corporate bankruptcy, and the attempted imprisonment of the debtors—while Procida absorbed both buildings and our life's work.

This transfer was fraudulent at its inception—engineered through coercion, insider dealings, and misrepresentation—and must be reversed as the first predicate act in what will become a forthcoming RICO action. Its reversal is necessary to restore public trust and legal integrity.

**Restitution and Relief for the Victims**

We request that any resolution of this estate prioritize direct and complete relief to the victims, including:

- Full refunds to couples whose weddings were canceled,

- Coordination with the IRS to retrieve and restore the information necessary to secure the founder's widow's 2023 and 2024 refunds—now inaccessible due to the trustee's failure to safeguard records,

- **A standing injunction against retaliation, coercion, or contempt threats in response to this protected disclosure.**

Note: Donata Garsia has already undertaken the burden of replacing stolen government documents herself. The Trustee's office should not be permitted to claim goodwill by offering meaningless token returns after facilitating theft and loss of trust. Any "returns" at this point must involve cooperation with the IRS and public acknowledgement of the chain of custody failure.

**As of this writing, Sills Cummis is actively seeking to jail us for noncompliance with asset-related subpoenas—despite those subpoenas being built on a fraudulent legal foundation rooted in the 468 Totowa seizure. We therefore request:**

**That this office formally recognize our status as federal whistleblowers,**
**And intervene to protect us from retaliatory legal maneuvers that seek to silence and punish us for exposing systemic abuse.**

### Public Acknowledgment of the Pattern

This must not be buried in bureaucracy.

What happened to us is not isolated—it is a reproducible playbook hiding in plain sight:

Abuse insider lending. Force foreclosure. Orchestrate bankruptcy. Strip assets. Silence dissent.

This is not just our story. It is a warning shot for every entrepreneur, every community builder, and every family working in good faith with legal and financial systems. If this pattern is not interrupted and exposed, it will metastasize.

We are not asking for favors. We are asking for the laws of this country to mean something—for our children, for the families we served, and for those who will be targeted next.

We urge your office to act—with integrity, urgency, and courage.


Respectfully submitted,
David J. Garsia
Whistleblower, pro se complainant
On behalf of myself, Donata Garsia, and the many families harmed

# Sills Cummis & Gross
### A Professional Corporation

The Legal Center
One Riverfront Plaza
Newark, New Jersey 07102
Tel: (973) 643-7000
Fax (973) 643-6500

Joshua N. Howley
Member & General Counsel
Direct Dial:  973-643-5341
Email: jhowley@sillscummis.com

101 Park Avenue, 28th Floor
New York, NY 10178
Tel: (212) 643-7000
Fax: (212) 643-6500

May 28, 2025

**Via U.S. Mail & Certified Mail, R.R.R.**

Donata Garsia
54 Hunter Road S. #14
North Haledon, NJ  07508

David E. Garsia
54 Hunter Road S. #14
North Haledon, NJ  07508

David Garsia
54 Hunter Road S. #14
North Haledon, NJ  07508

468 Totowa Avenue, Inc.
54 Hunter Road S. #14
North Haledon, NJ  07508

Re:    **100 Mile REIT, Inc. v. Great Falls Industrial Park, Inc., etc. et al.**
       **Docket No. PAS-L-000444-24**

Dear Sir/Madam:

We represent Plaintiff 100 Mile REIT, Inc. in this matter.  Enclosed is a filed copy of the Notice of Motion to Enforce Litigants' Rights Against Defendants, Certification of Joshua N. Howley, Esq. in Support of Plaintiff's Motion to Enforce Litigants' Rights Against Defendants and proposed Order to Enforce Litigants' Rights filed on May 28, 2025.  Thank you.

Very truly yours,

*/s/ Joshua N. Howley*

Joshua N. Howley

Enclosures

Joshua N. Howley, Esq. (NJ Bar No. 021722001)
SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000
*Attorneys for Plaintiff*
*100 Mile Reit, Inc.*

| | |
|---|---|
| 100 MILE REIT, INC., | SUPERIOR COURT OF NEW JERSEY |
| Plaintiff, | LAW DIVISION – PASSAIC COUNTY |
| | Docket No.: PAS-L-000444-24 |
| v. | Judgment No.: J-030689-25 |
| GREAT FALLS INDUSTRIAL PARK, INC.; | Civil Action |
| 468 TOTOWA AVENUE, INC.; DAVID E. GARSIA; DAVID GARSIA; and DONATA GARSIA, | NOTICE OF MOTION TO ENFORCE LITIGANTS' RIGHTS AGAINST DEFENDANTS |
| Defendants. | |

TO:    DONATA GARSIA
        54 Hunter Road S. #14
        North Haledon, NJ 07508

        DAVID E. GARSIA
        54 Hunter Road S. #14
        North Haledon, NJ 07508

        DAVID GARSIA
        54 Hunter Road S. #14
        North Haledon, NJ 07508

        468 TOTOWA AVENUE, INC.
        54 Hunter Road S. #14
        North Haledon, NJ 07508

SIR(S)/MADAM(S):

PLEASE TAKE NOTICE that on Friday, June 19, 2025, at nine o'clock in the forenoon

or as soon thereafter as counsel may be heard, the undersigned, counsel for Plaintiff, 100 Mile

Reit, Inc., shall make an application to the Hon. Bruno Mongiardo, J.S.C., Superior Court of

New Jersey, Law Division, Passaic County Historic Courthouse, 71 Hamilton Street, 3rd Floor,

for an Order as follows:

1. Adjudicating that Defendant, Donata Garsia, has violated the litigant's rights of Plaintiff by failure to comply with the Information Subpoena served upon her;

2. Adjudicating that Defendant, David E. Garsia, has violated the litigant's rights of Plaintiff by failure to comply with the Information Subpoena served upon him;

3. Adjudicating that Defendant, David Garsia, has violated the litigant's rights of Plaintiff by failure to comply with the Information Subpoena served upon him;

4. Compelling Defendants to immediately furnish documents as required by the Information Subpoenas served on April 28, 2025;

5. Directing that if Defendants fail to appear in court on the date written above, they may be arrested by the Sheriff and confined in the county jail until they respond to the Information Subpoenas; and

6. Granting such other relief as may be appropriate.

If you have been served with an Information Subpoena, you may avoid having to appear in court by sending written answers to the questions attached to the Information Subpoena to me no later than three (3) days before the court date.

2

I will rely on the certification attached hereto.

**SILLS CUMMIS & GROSS P.C.**
*Attorneys for Plaintiff*
*100 Mile Reit, Inc.*

By: */s/ Joshua N. Howley*
     Joshua N. Howley

Dated:  May 28, 2025

3

## CERTIFICATE OF SERVICE

I certify that I served a copy of this motion by mailing it on this date to the person(s)

listed below by U.S. First Class Mail and simultaneously by certified, R.R.R. on:

DONATA GARSIA
54 Hunter Road S. #14
North Haledon, NJ 07508

DAVID E. GARSIA
54 Hunter Road S. #14
North Haledon, NJ 07508

DAVID GARSIA
54 Hunter Road S. #14
North Haledon, NJ 07508

468 TOTOWA AVENUE, INC.
54 Hunter Road S. #14
North Haledon, NJ 07508

I certify that the foregoing statements made by me are true. I am aware that if the

foregoing statements made by me are willfully false, I am subject to punishment.

By: /s/ Joshua N. Howley
Joshua N. Howley

Dated:  May 28, 2025

# EXHIBIT C

**Burglary Timeline and Video Evidence Summary**

This exhibit describes the post-eviction looting of Plaintiff's business and residence. It includes a detailed incident timeline, supporting video surveillance footage, and firsthand documentation of theft, camera destruction, and illegal occupation of Plaintiff's apartment by Trustee-hired "security."

On September 24 the trustee shut down the business and John told us to leave the property, and not take anything. We did. We left everything our family owned in the apartment onsite, including paperwork, money, our daughters' clothes, all personal effects . . . Everything. I told John that the building will be burglarized without a doubt and that he had to make sure the trustee secured everything.

The trustee sent Harry Byrnes to meet us at the site on Thursday, September 26. When we arrived the building was being burglarized as I predicted. Right in front of our eyes.

I walked Harry and John all around the building and showed them lots of valuable items, including the 1,200 wedding chairs Donata bought personally, ovens and kitchen equipment, storerooms full of decor and props, electronic equipment and so on. I told Harry that these things were valuable and that they had to be secured.

You can see the text between John and I on Thursday and then the message I sent him on Friday when we received a note from the wife of one of our long-time employees that the main office was being burglarized.

Friday night they broke into our apartment and burglarized that too.

See the texts below:



On Friday I texted the same messages to Harry about the burglarization of the main office to which he replied that he hired Ernest Rucker "to be the equivalent of 24 hour security."

On Saturday morning I sent Harry the same message along with a video of our apartment being broken into and burglarized. Never heard back.



**Harry Trustee**

iMessage
Fri, Sep 27 at 6:05 PM

Hi Harry. Dave from Great Falls (Art Factory). We met yesterday. I just got word that they broke into the main office where all of the company paperwork is located and they are carrying everything out. They are still running rampant around the place.

Building 12.

New Contact Name
Johanna Warner                                    **Update**    ✕

I can't imagine going through that although I once told Angel that you and I are tough, strong women.
God bless.

Read 8/7/24

Wed, Aug 7 at 10:40 AM

Yes ty so much

Today 4:51 PM

They broke in to building 12 just letting you know there is lots of personal info.

This afternoon I hired Ernest Rucker to be the equivalent of 24 hour security.  He's helping me secure the building.

It will take few days to get it under control.

Please call him then and tell him to secure the main office at least. Thanks. I'm afraid the paperwork, deeds, wills, checkbooks . . . He knows building 12. Please ask him to secure that first.

I will.

Thank you.

Message

| I | The | I'm |



Then, astonishingly, later that same day (Saturday) the same Ernest Rucker that Harry hired for the trustee as security broke into our apartment, burglarized it and move in to live with his girlfriend.  Mind you, that's the same apartment where we left my 8 and 10 year - old daughter's underpants. Talk about being brutally violated.

Ernest Rucker is (or was until recently) a residential zoning officer for the City of Paterson.

Here is a link to a short 12 min video compilation (we have hours of film).

https://www.dropbox.com/scl/fi/5acclhzjxq6xd3ymvt02o/copy_72685FE3-3134-4B48-9CF0-E62
6D0F1A2EB.MOV?rlkey=0xmnfq82b869smxzjyoeh5xko&st=bu6psaxc&dl=0

Here is the timeline and description that goes along with this short video.

Timeline for Evidence Video

1.    9/18/24

0:00 - 0:08:

•    David Paying Cash to Alan (Ultimate Catering):

Footage shows David handing over Donata's last "rainy day" cash to Alan from Ultimate Catering to honor the wedding commitment, despite the attorney's advice not to.

      2.      9/25/24 - 9/26/24

0:08 - 0:40

- Burglary of office equipment

      3.      0:49:

- Breaking the Cameras:

Footage of individuals using painting poles to break and rip out the cameras in the office spaces.

      4.      9/27/24 - 9/30/24

2:20:

- Break-in at the Private Residence ("Loft"):
- A clear view of individuals breaking into the private residence.

      5.      2:40 - 3:20:

- Ernest Breaking the Camera System:

Footage of Ernest, hired by the trustee, destroying what he thinks is the active camera above the Garsia residence.

      6.      3:42 - 4:20:

- Burglary and Drinking:
- The burglary continues, with individuals drinking on the premises.

      7.      4:20:

- Juan Removing the Gap Bag:

Juan arrives early in the morning, removing the Gap bag where Donata stored cash and wedding receipts for her team.

      8.      4:30 - 5:00:

- Continued Burglary:

Footage shows the ongoing burglary, with further break-ins and vandalism occurring.

9.      5:00:

•      Ernest and His Girlfriend Move Into the Loft:

Ernest and his girlfriend are seen moving into the Loft, occupying the space with all of Donata and her children's beds, personal belongings, and documents still inside.

10.     7:47:

•      Documents Pushed Onto the Staircase:

Footage shows that documents and paperwork now spread out on a large table, have been pushed out onto the staircase.

11.     9:56:

•      Searching Through Documents:

Individuals are seen searching through personal and business documents.

Dave

# EXHIBIT D

**Retaliatory Email from William "Billy" Procida**

This email sent by Defendant Procida to the Plaintiff includes the phrase "F— You," and serves as evidence of personal animus and retaliatory motive. It supports Plaintiff's civil rights, abuse of process, and RICO conspiracy claims.

 Gmail

Art Factory <create.artfactory@gmail.com>

## Foreclosure

**Bill Procida** <bprocida@procida.com>                                      Tue, Jan 26, 2021 at 4:48 PM
To: David Garsia <create.artfactory@gmail.com>
Cc: Derek Weissman <dweissman@procida.com>, Michael Leighton <mleighton@sillscummis.com>, Office
<office@procida.com>

Foreclosure starts tomorrow. You fucked the wrong guy.   Tell your mom and da and wife. I don't want them to be
surprised.  24% since 19.  Covid had nothing to do with it.  Your a scumbag piece of shit low life.  Pay me

Billy Procida
Procida Funding & Advisors
bprocida@procida.com
201-248-9370 (c)
201-871-1177 (o)
570 Sylvan Ave
Englewood Cliffs, NJ 07632
www.procida.com

# EXHIBIT E

**Evidence of Free Speech Suppression and Civil Rights Violations**

This exhibit contains coordinated communications between the Trustee, Trustee's counsel, and estate counsel showing joint efforts to suppress the Plaintiff's Instagram posts and other public statements.

Includes:
- Trustee invoice billing for "social media" monitoring
- Email from John O'Boyle relaying threats from Sills Cummis (Jason Teele)
- Trustee counsel's demand for takedown and account credentials

Case 24-18343-JKS   Doc 143-3   Filed 05/21/25   Entered 05/21/25 09:25:18   Desc
Exhibit B - Prebill   Page 2 of 10

| | |
|---|---|
| Timekeeper Schedule | A - Rate 2024 |
| Final Bill Report | BSGCorporate |
| Bill Frequency | Monthly |
| Client | 4192 |

| 001 | Chapter 7 Bankruptcy Trustee and Legal Matter | Originator(s) | | Responsible | |
|---|---|---|---|---|---|
| ERP | Eric R. Perkins | ERP | 100% | ERP | 100% |

## ACTION TO BE TAKEN

| ☐ Ready to Bill | ☐ Transfer | ☐ Reallocate |
|---|---|---|
| ☐ Write off | ☐ Hold | ☐ Other |

| THIS BILL | | | LAST BILL PRIOR BALANCE | | AR AGING OF PRIOR BALANCE | |
|---|---|---|---|---|---|---|
| Fees | 13,614.00 | Invoice # | Date of Last Bill | | 0-30 | 0.00 |
| Costs | 573.44 | 72596 | Balance Forward | 0.00 | 31-60 | 0.00 |
| Interest | 0.00 | Through | Payments | 0.00 | 61-90 | 0.00 |
| Discount | 0.00 CR | 05/07/2025 | Adjustments | 0.00 | 91-120 | 0.00 |
| Surcharge | 0.00 | Total | | Net Bal Forward | 120+ | 0.00 |
| Tax | 0.00 | $14,187.44 | | $0.00 | Total AR | $0.00 |

## TRUST ACCOUNT & ACCOUNT CREDITS

**BILL INSTRUCTIONS**

| Trust Balances | Apply | Advance Balances | Apply |
|---|---|---|---|
| Client Amount | 0.00 ☐ | Client Amount | 0.00 ☐ |
| Matter Amount | 0.00 ☐ | Matter Amount | 0.00 ☐ |

## MATTER HISTORY

**ADDITIONAL NOTES**

| FEES | Year to Date | Inception to Date | EXPENSES | Year to Date | Inception to Date |
|---|---|---|---|---|---|
| Fees Worked | 750.00 | 19,884.00 | Exp Worked | 0.00 | 573.44 |
| Fee Discount | 0.00 | 0.00 | Exp Discount | 0.00 | 0.00 |
| Fee Variance/MD | 0.00 | 0.00 | Exp Variance/MD | 0.00 | 0.00 |
| Fees Billed | 0.00 | 0.00 | Exp Billed | 0.00 | 0.00 |
| Fees Collected | 0.00 | 0.00 | Exp Collected | 0.00 | 0.00 |
| Fees Adjusted/WO | 0.00 | 0.00 | Exp Adjusted/WO | 0.00 | 0.00 |
| Fee Realization | 0.0% | 0.0% | Exp Realization | 0.0% | 0.0% |
| Hours Worked | 3.0 | | | | |
| Hours Billed | 0.0 | | | | |

## DRAFT BILL - FOR INTERNAL DISTRIBUTION ONLY

May 1, 2025

Invoice #72596

File Number: 4192-001-ERP

RE:  **Chapter 7 Bankruptcy Trustee and Legal Matter**

| | | | Fee Detail | | | | |
|---|---|---|---|---|---|---|---|
| **Fee ID** | **Date** | **Atty** | **Description** | **Task:Act** | **Hours** | **Rate** | **Amount** |
| **Case Administration** | | | | | | | |
| 970282 | 10/04/2024 | JB | Reviewed Former Chapter 11 Debtor's Motion to Approve use of cash collateral and other first day motions in order to assess secured liens in case. | B110 - | 1.00 | 435.00 | $435.00 |
| 969818 | 10/25/2024 | JB | Call with Court to advise of Trustee's efforts to obtain property insurance on Debtor's real property and possibility Trustee will need to file an emergency Motion to Dismiss if insurance cannot be obtained. | B110 - | 0.10 | 435.00 | $43.50 |
| 969835 | 10/25/2024 | JB | Outlined and began drafting sections for potential Emergency Motion to Dismiss case due to lack of real property insurance. | B110 - | 1.00 | 435.00 | $435.00 |
| 969833 | 10/25/2024 | JB | Researched case law re: Motion to Dismiss Chapter 7 case due to lack of insurance to cover Debtor's principal asset. | B110 - | 1.70 | 435.00 | $739.50 |
| 969487 | 10/29/2024 | JB | Continued Motion to Dismiss Case based on failure to obtain property insurance. | B110 - | 2.50 | 435.00 | $1,087.50 |
| 969812 | 10/30/2024 | JB | Continued preparing Emergency Motion to Dismiss case because Trustee was unable to obtain insurance coverage after consulting with numerous insurance brokers. | B110 - | 1.30 | 435.00 | $565.50 |
| 969800 | 10/31/2024 | JB | Communicated with Trustee and Court regarding status of Trustee obtaining property insurance on Debtor's real property located at 9 Spruce Street. | B110 - | 0.30 | 435.00 | $130.50 |
| 972064 | 11/08/2024 | JB | Forwarded Motion to Dismiss case for lack of insurance to Trustee's co-counsel. | B110 - | 0.20 | 435.00 | $87.00 |

# DRAFT BILL – FOR INTERNAL DISTRIBUTION ONLY

Great Falls Industrial Park, Inc. (Eric R. Perkins as Ch. 7 Trustee)

Chapter 7 Bankruptcy Trustee and Legal Matter

Invoice # 72596

Becker LLC

May 1, 2025

Page # 3

### Fee Detail

| Fee ID | Date | Atty | Description | Task:Act | Hours | Rate | Amount |
|---|---|---|---|---|---|---|---|
| **Case Administration** | | | | | | | |
| 973704 | 12/10/2024 | JB | Drafted email memo Requesting Title and Judgment Search Great Falls Industrial Park, Inc.'s properties from Zwiren Title Company. | B110 - | 0.40 | 435.00 | $174.00 |
| | | | **Task Total** | | **8.50** | | **$3,697.50** |
| **Asset Analysis and Recovery** | | | | | | | |
| 968236 | 09/26/2024 | JB | Initial call with Trustee about details of new bankruptcy case and course of action going forward. | B120 - | 0.70 | 435.00 | $304.50 |
| 968239 | 09/26/2024 | JB | Reviewed Debtor's petition and schedules for assets and liabilities. Conducted search and reviewed various liens, including construction and tax liens on Debtor's Real Property. | B120 - | 2.30 | 435.00 | $1,000.50 |
| 967324 | 09/30/2024 | JB | Communications with Trustee re: necessary steps to take to secure building and determine if auction sale is feasible. | B120 - | 0.20 | 435.00 | $87.00 |
| 967328 | 09/30/2024 | JB | Call with Trustee's Auctioneer about status of property, insurance, value, etc. | B120 - | 0.10 | 435.00 | $43.50 |
| 970298 | 10/01/2024 | JB | Call with Auctioneer of Debtor's real property about logistics of securing and selling same. | B120 - | 0.20 | 435.00 | $87.00 |
| 970299 | 10/01/2024 | JB | Researched and reviewed tax and property records for Debtor's property to ascertain amount of back taxes, if there are any tax sale certificates, and whether there is more than one parcel of land. | B120 - | 1.70 | 435.00 | $739.50 |
| 970300 | 10/01/2024 | JB | Call with Trustee about new asset case and background on Debtor's business and potential sale of underlying real property in Chapter 7. | B120 - | 0.40 | 435.00 | $174.00 |
| 970301 | 10/01/2024 | JB | Drafted email memo to Debtor's counsel requesting access to all of Debtor's social media accounts, accounts receivable statements, and any outstanding amounts due to utilities. | B120 - | 0.50 | 435.00 | $217.50 |

# DRAFT BILL - FOR INTERNAL DISTRIBUTION ONLY

Great Falls Industrial Park, Inc. (Eric R. Perkins as Ch. 7 Trustee)                                      Becker LLC
Chapter 7 Bankruptcy Trustee and Legal Matter                                                         May 1, 2025
Invoice # 72596                                                                                            Page # 4

## Fee Detail

| Fee ID | Date | Atty | Description | Task:Act | Hours | Rate | Amount |
|--------|------|------|-------------|----------|-------|------|--------|
| **Asset Analysis and Recovery** | | | | | | | |
| 970302 | 10/01/2024 | JB | Call with Debtor's counsel regarding access to all of Debtor's social media accounts, securing the property, and obtaining any outstanding receivables. | B120 - | 0.20 | 435.00 | $87.00 |
| 967832 | 10/03/2024 | JB | Call with Trustee about various construction and tax liens on Debtor's property located at 9 and 11 Spruce Street, Paterson, NJ. | B120 - | 0.40 | 435.00 | $174.00 |
| 967924 | 10/04/2024 | JB | Reviewed state court default Judgment and complaint of Secured Creditor 100 REIT. | B120 - | 0.40 | 435.00 | $174.00 |
| 967925 | 10/04/2024 | JB | Researched construction lien laws in NJ as to commercial buildings to assess validity of liens on Debtor's commercial real property. | B120 - | 0.70 | 435.00 | $304.50 |
| 969834 | 10/25/2024 | JB | Reviewed Debtor's petition and schedules to confirm no additional assets of value that if liquidated would benefit unsecured creditors for the purpose of drafting Motion to Dismiss bankruptcy case for lack of insurance on 9 Spruce Street; Debtor's principal asset. | B120 - | 0.30 | 435.00 | $130.50 |
| 969488 | 10/29/2024 | JB | Communications with Trustee about potential new insurer about necessary documents to insure Debtor's property located at 9 Spruce Street.. | B120 - | 0.30 | 435.00 | $130.50 |
| 969809 | 10/30/2024 | JB | Call with Trustee about status of insurance on Debtor's real property and contents of Motion to Dismiss should Estate be unable to obtain real property insurance. | B120 - | 0.30 | 435.00 | $130.50 |
| 972065 | 11/08/2024 | JB | Discussed with Trustee's co-counsel case law for credit bidding by a secondary lender as it relates to sale of Debtor's real property as well as a carve out of a secured lenders claim for the benefit of unsecured creditors. | B120 - | 0.50 | 435.00 | $217.50 |
| 972059 | 11/11/2024 | JB | Addressed potential notice of abandonment of Debtor's Real Property with Trustee. | B120 - | 0.40 | 435.00 | $174.00 |

## DRAFT BILL - FOR INTERNAL DISTRIBUTION ONLY

Great Falls Industrial Park, Inc. (Eric R. Perkins as Ch. 7 Trustee)    Becker LLC
Chapter 7 Bankruptcy Trustee and Legal Matter                            May 1, 2025
Invoice # 72596                                                          Page # 5

### Fee Detail

| Fee ID | Date | Atty | Description | Task:Act | Hours | Rate | Amount |
|---|---|---|---|---|---|---|---|
| **Asset Analysis and Recovery** | | | | | | | |
| 972060 | 11/11/2024 | JB | Discussed total amount of liens on Debtor's real property with Trustee's co-counsel. | B120 - | 0.20 | 435.00 | $87.00 |
| | | | Task Total | | 9.80 | | $4,263.00 |
| **Asset Disposition** | | | | | | | |
| 967722 | 10/02/2024 | JB | Call with Auctioneer Harry Byrnes about pending sale of 9 Spruce Street, Debtor's Property. | B130 - | 0.20 | 435.00 | $87.00 |
| 967723 | 10/02/2024 | JB | Further review of various tax liens and construction liens on Debtor's real property. | B130 - | 0.40 | 435.00 | $174.00 |
| 970196 | 10/11/2024 | JB | Communicated with Trustee about status of Debtor's real property; ability to obtain insurance; and potential carve out for the Estate from secured creditor. | B130 - | 0.50 | 435.00 | $217.50 |
| 970184 | 10/14/2024 | JB | Reviewed Debtor's schedules to ascertain the extent of liens held on 9 Spruce Street and 11 Spruce Street. Conducted judgment lien search for additional liens on properties. | B130 - | 0.50 | 435.00 | $217.50 |
| 970137 | 10/18/2024 | JB | Further review of state court foreclosure documents to obtain amount and number of liens of the Debtor's real property. | B130 - | 0.70 | 435.00 | $304.50 |
| 969815 | 10/28/2024 | JB | Call with Trustee about additional conversations with insurance brokers to try and obtain insurance for Debtor's Property and status of emergency Motion to dismiss case if insurance cannot be obtained. | B130 - | 0.30 | 435.00 | $130.50 |
| 972087 | 11/01/2024 | JB | Communication with Trustee's co-counsel re: tax sale certificates existing on Debtor's properties and providing documents supporting same. | B130 - | 0.30 | 435.00 | $130.50 |
| 972088 | 11/01/2024 | JB | Communication with Trustee's co-counsel re: applications to retain Max Spann and AJ Wilner as co-auctioneers. | B130 - | 0.10 | 435.00 | $43.50 |

# DRAFT BILL - FOR INTERNAL DISTRIBUTION ONLY

Great Falls Industrial Park, Inc. (Eric R. Perkins as Ch. 7 Trustee)

Chapter 7 Bankruptcy Trustee and Legal Matter

Invoice # 72596

Becker LLC
May 1, 2025
Page # 6

## Fee Detail

| Fee ID | Date | Atty | Description | Task:Act | Hours | Rate | Amount |
|---|---|---|---|---|---|---|---|
| **Asset Disposition** | | | | | | | |
| 972078 | 11/04/2024 | JB | Communication with Trustee's co-counsel about potential liens on Debtor's property that would encumber a sale. | B130 - | 0.20 | 435.00 | $87.00 |
| 972079 | 11/04/2024 | JB | Drafted email memo to Trustee's co-counsel about total amount of potential liens on Debtor's property that would encumber an auction sale. | B130 - | 0.40 | 435.00 | $174.00 |
| 972077 | 11/05/2024 | JB | Further review of Bankruptcy and State Court docket for Debtor to assess if any additional statutory or judicial liens on Debtor's property listed at 9 and/or 11 Spruce Street. | B130 - | 0.30 | 435.00 | $130.50 |
| 970534 | 11/11/2024 | TC | Prepare Trustee's Notice of Abandonment regarding 9 Spruce Street, Paterson, NJ. | B130 - | 1.50 | 295.00 | $442.50 |
| 972050 | 11/13/2024 | JB | Email to Co-counsel re: potential liens on Debtor's real property. | B130 - | 0.10 | 435.00 | $43.50 |
| 971655 | 11/26/2024 | JB | Call with Trustee about procedures and guidelines for Chapter 7 carve out (.2). Researched case law supporting Chapter 7 Carve Out (.6). | B130 - | 0.80 | 435.00 | $348.00 |
| 973251 | 12/17/2024 | JB | Follow up communications on title company about ordering title search for Debtor's properties. | B130 - | 0.10 | 435.00 | $43.50 |
| | | | Task Total | | 6.40 | | $2,574.00 |
| | | | | | | | |
| **Meetings of and Communications with Creditors** | | | | | | | |
| 967322 | 09/30/2024 | JB | Call with Debtor's secured creditor REIT Trust about potential sale of building. | B150 - | 0.20 | 435.00 | $87.00 |
| 967323 | 09/30/2024 | JB | Call with Debtor's secured creditor REIT Trust about potential sale of building. | B150 - | 0.30 | 435.00 | $130.50 |
| 967327 | 09/30/2024 | JB | Call to Debtor's counsel about Utilities and Debtor's Social Media Accounts. | B150 - | 0.20 | 435.00 | $87.00 |

## DRAFT BILL - FOR INTERNAL DISTRIBUTION ONLY

Great Falls Industrial Park, Inc. (Eric R. Perkins as Ch. 7 Trustee)

Chapter 7 Bankruptcy Trustee and Legal Matter

Invoice # 72596

Becker LLC
May 1, 2025
Page # 7

### Fee Detail

| Fee ID | Date | Atty | Description | Task:Act | Hours | Rate | Amount |
|---|---|---|---|---|---|---|---|
| **Meetings of and Communications with Creditors** | | | | | | | |
| 970093 | 10/21/2024 | JB | Discussed with Trustee the request of former tenant at Debtor's real property at 9 Spruce Street to access property to pick up belongings. | B150 - | 0.20 | 435.00 | $87.00 |
| | | | Task Total | | 0.90 | | $391.50 |
| | | | | | | | |
| **Fee/Employment Applications** | | | | | | | |
| 967303 | 09/30/2024 | JB | Spoke to Auctioneer AJ Wilner about retention (.2) and reviewed auctioneer retention papers (.2). | B160 - | 0.40 | 435.00 | $174.00 |
| 967308 | 09/30/2024 | TC | Prepare Retention Application of AJ Wilner Auctions, LLC as Co-Auctioneer for Chapter 7 Trustee and electronically file same with the Bankruptcy Court. | B160 - | 1.50 | 295.00 | $442.50 |
| 967309 | 09/30/2024 | TC | Prepare Retention Application of Max Spann Real Estate & Auction Company as Co-Auctioneer for Chapter 7 Trustee and electronically file same with the Bankruptcy Court. | B160 - | 1.50 | 295.00 | $442.50 |
| 967310 | 09/30/2024 | TC | Prepare service list of creditors for service of retention applications. | B160 - | 0.50 | 295.00 | $147.50 |
| 967311 | 09/30/2024 | TC | Coordinate service of filed Retention Applications for Becker LLC, AJ Wilner Auctions, LLC and Max Spann Real Estate and Auction Company and electronically file Certificate of Service with the Bankruptcy Court. | B160 - | 1.00 | 295.00 | $295.00 |
| 969654 | 11/01/2024 | TC | Prepare Retention of Vestcorp as Accountants for Trustee and electronically file same with the Bankruptcy Court. | B160 - | 1.50 | 295.00 | $442.50 |
| 980703 | 04/30/2025 | AS | Preparation of Cover Sheet, First and Final Fee Application, Certification of Joseph G. Harraka Counsel to Eric Perkins Trustee and proposed Order | B160 - | 3.00 | 190.00 | $570.00 |
| | | | Task Total | | 9.40 | | $2,514.00 |

# DRAFT BILL - FOR INTERNAL DISTRIBUTION ONLY

Great Falls Industrial Park, Inc. (Eric R. Perkins as Ch. 7 Trustee)

Chapter 7 Bankruptcy Trustee and Legal Matter

Invoice # 72596

Becker LLC

May 1, 2025

Page # 8

## Fee Detail

| Fee ID | Date | Atty | Description | Task:Act | Hours | Rate | Amount |
|---|---|---|---|---|---|---|---|
| General Bankruptcy Advice/Opinions | | | | | | | |
| 973755 | 12/20/2024 | JB | Reviewed Title Report and Lien Package sent by Title Company. | B410 - | 0.40 | 435.00 | $174.00 |
| | | | Task Total | | 0.40 | | $174.00 |
| | | | Total Fees | | 35.40 | | $13,614.00 |

## Cost Detail

| Entry ID | Entry Date | Qty | Amount | Description | Code |
|---|---|---|---|---|---|
| 970563 | 11/12/2024 | 50.76 | $50.76 | Stretto - Invoice 12959 - legal noticing and postage charges for October 2024 | E124 |
| 972450 | 12/12/2024 | 22.68 | $22.68 | Stretto - Invoice13239 - legal noticing and postage charges for November 2024 | E124 |
| 974121 | 01/09/2025 | 500.00 | $500.00 | Credit card charges - stmt ending 12/23/24 - agency fee for title search | E124 |
| COST TOTAL | | | $573.44 | | |

## DRAFT BILL - FOR INTERNAL DISTRIBUTION ONLY

Great Falls Industrial Park, Inc. (Eric R. Perkins as Ch. 7 Trustee)
Chapter 7 Bankruptcy Trustee and Legal Matter
Invoice # 72596

Becker LLC
May 1, 2025
Page # 9

### Timekeeper Summary

| Attorney | Rate | Hours | Amount |
|---|---|---|---|
| Justin Baumgartner | $435.00 | 24.90 | $10,831.50 |
| Angelique  Snyder | $190.00 | 3.00 | $570.00 |
| Tiffany Colombini | $295.00 | 7.50 | $2,212.50 |

### Task Code Summary

| Task Code | | Rate | Hours | Amount |
|---|---|---|---|---|
| B110 | Case Administration | $435.00 | 8.50 | $3,697.50 |
| B120 | Asset Analysis and Recovery | $435.00 | 9.80 | $4,263.00 |
| B130 | Asset Disposition | $402.19 | 6.40 | $2,574.00 |
| B150 | Meetings of and Communications with Creditors | $435.00 | 0.90 | $391.50 |
| B160 | Fee/Employment Applications | $267.45 | 9.40 | $2,514.00 |
| B410 | General Bankruptcy Advice/Opinions | $435.00 | 0.40 | $174.00 |

### EXPENSE SUMMARY

| Code | Description | Amount |
|---|---|---|
| E124 | Other | $573.44 |

| | Amount |
|---|---|
| Total Fees & Expenses | $14,187.44 |
| BALANCE DUE UPON RECEIPT | $14,187.44 |

6/23/25, 8:14 AM                                    Gmail - 100 Mile -Art Factory

 Gmail                                            Art Factory <create.artfactory@gmail.com>

## 100 Mile -Art Factory
6 messages

**John O'Boyle** <joboyle@norgaardfirm.com>                      Sat, Sep 21, 2024 at 4:19 PM
To: Factory Art <create.artfactory@gmail.com>
Cc: Brian Hannon <bhannon@norgaardfirm.com>, Carol Rose <crose@norgaardfirm.com>

Dave:  see the email below from counsel to 100 Mile.  In the strongest terms, I advise you to stop having people call
Procida and to pull down the social media positions RIGHT NOW.


Sent from my iPhone

Begin forwarded message:


> **From:** Jason Teele <steele@sillscummis.com>
> **Date:** September 21, 2024 at 3:01:03 PM EDT
> **To:** John O'Boyle <joboyle@norgaardfirm.com>
> **Subject: Re: Art Factory**


> I sent an invite for Monday morning. Please forward it to your client. Thanks.

> **S. Jason Teele, Esq.**
> Member
> **Sills Cummis & Gross P.C.**
> One Riverfront Plaza
> Newark, New Jersey 07102
> Tel. (973) 643-4779
> Cell. (908) 451-1001


> **From:** Jason Teele <steele@sillscummis.com>
> **Sent:** Saturday, September 21, 2024 2:52:28 PM
> **To:** joboyle@norgaardfirm.com <joboyle@norgaardfirm.com>
> **Subject:** Art Factory

> John,

> Your client is giving parties Billy's cell phone number and telling them to call him about their upcoming
> weddings. While things highly inappropriate and exceedingly unprofessional, it would not be appropriate for
> 100 Mile, as the secured lender, to respond to these inquiries. This needs to stop. If it doesn't, we will simply
> advise those who call to contact the NJ Bureau of Consumer Protection and the NJ Attorney General.

> Several of the messages refer to contracts and prepayments. You should discuss with your client but if they
> are retaining client funds and are unable to perform under the contracts (as you told the court they couldn't
> do), then I imagine your clients will have some personal exposure once/if the state consumer protection
> folks get involved.

> **S. Jason Teele, Esq.**
> Member
> **Sills Cummis & Gross P.C.**
> One Riverfront Plaza

Newark, New Jersey 07102
Tel. (973) 643-4779
Cell. (908) 451-1001

NOTICE: The contents of this email and any attachments to it contain confidential and/or legally privileged information from the law firm of Sills Cummis & Gross P.C. This information is only for the use of the intended recipient. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or the taking of any action in reliance on the contents of the contained information is strictly prohibited and that the documents should be returned to this firm immediately. In this regard, if you have received this email in error, please notify us by email immediately.

**Although this email and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by Sills Cummis & Gross P.C. for any loss or damage arising in any way from its use.

This email message has been scanned for viruses by Mimecast.

---

**Art Factory** <create.artfactory@gmail.com>                     Sat, Sep 21, 2024 at 4:48 PM
To: "fredluberto@gmail.com" <fredluberto@gmail.com>

[Quoted text hidden]

--

## Schedule your tour

---

**Art Factory** <create.artfactory@gmail.com>                     Sun, Sep 22, 2024 at 7:22 PM
To: John O'Boyle <joboyle@norgaardfirm.com>
Cc: Brian Hannon <bhannon@norgaardfirm.com>, Carol Rose <crose@norgaardfirm.com>

We've got Governor Murphy involved now. His people need our counterclaim filed Monday. He's involved in particular because of Billy's gouging during Covid while we were closed following Governor's orders. I have more to add, but the papers that Joe filed in state court is a good start. I don't think I want to be on a call with them today. We'll just hear more from the devil's mouth and frankly with the Governor involved it's past talking now.
Please confirm that you are filing this today so I can let them know. They tell me the judge should know about this immediately.
Meantime, I have at least 50 brides ready to skip work to go to court if that will help us.
I'm attaching Joe's counterclaims. They start on page 12.
Dave
[Quoted text hidden]
[Quoted text hidden]

 **foreclosure_answer.pdf**
660K

---

**John O'Boyle** <joboyle@norgaardfirm.com>                     Sun, Sep 22, 2024 at 9:20 PM
To: Art Factory <create.artfactory@gmail.com>
Cc: Brian Hannon <bhannon@norgaardfirm.com>, Carol Rose <crose@norgaardfirm.com>

Dave:

I don't know what you are talking about and I am not filing anything.  Your answer to the foreclosure suit was already filed.

If you don't ant to be on the call on Monday that is OK.  But On Tuesday I have to tell Judge Sherwood whether or not you are seeking to sell the property in conjunction with 100 Mile or whether you wish to convert the case to chapter 7.  As you don't seem to be of a mind to settle anything with 100 Mile, it appears that you are choosing chapter 7.

Chapter 7 will have a trustee appointed and you won't be permitted to continue any events at the location, even at your own expense.

John O'Boyle, Esq.

Norgaard, O'Boyle & Hannon

184 Grand Avenue

Englewood, NJ  07631

Phone: (201) 871-1333

Mobile: (862) 216-1475

Fax: (201) 871-3161

Email: joboyle@norgaardfirm.com

[Quoted text hidden]

---

**Art Factory** <create.artfactory@gmail.com>                                    Sun, Sep 22, 2024 at 9:23 PM
To: "fredluberto@gmail.com" <fredluberto@gmail.com>

## Schedule your tour

---------- Forwarded message ---------
From: **John O'Boyle** <joboyle@norgaardfirm.com>
[Quoted text hidden]
[Quoted text hidden]

---

**Art Factory** <create.artfactory@gmail.com>                                    Sun, Sep 22, 2024 at 10:04 PM
To: John O'Boyle <joboyle@norgaardfirm.com>
Cc: Brian Hannon <bhannon@norgaardfirm.com>, Carol Rose <crose@norgaardfirm.com>

So I paid you $40,000 and you are not going to let all the creditors know that I'm alleging fraud by Procida? Is that not something that all of the creditors should know? Even if it's only alleged? What about the judge? Is it incumbent upon the creditors and the judge to read the state case for their information?

## Schedule your tour

[Quoted text hidden]

6/23/25, 8:17 AM                        Gmail - FW: GREAT FALLS INDUSTRIAL PARK Requests from Chapter 7 Trustee

 Gmail                                          Art Factory <create.artfactory@gmail.com>

## FW: GREAT FALLS INDUSTRIAL PARK Requests from Chapter 7 Trustee
4 messages

**John O'Boyle** <joboyle@norgaardfirm.com>                          Tue, Oct 1, 2024 at 4:41 PM
To: Art Factory <create.artfactory@gmail.com>

Please see below

**From:** Justin Baumgartner <jbaumgartner@becker.legal>
**Sent:** Tuesday, October 1, 2024 3:25 PM
**To:** John O'Boyle <joboyle@norgaardfirm.com>
**Cc:** Eric R Perkins <eperkins@becker.legal>
**Subject:** GREAT FALLS INDUSTRIAL PARK Requests from Chapter 7 Trustee

John,

Hope you are doing well. I tried you a couple times on your cell to discuss this case now that Eric is the Chapter 7 Trustee. As you know, we have been trying to secure the site of the property, while looking into the possibility of a sale.

Today, we were informed by our auctioneer that there may be commercial tenants still on the property and that Donata Garsia has asked them to direct their "rent" payments directly to her rather than to the Debtor. Obviously, this is against the Bankruptcy Code and any payments of this kind that have been made are property of the Debtor's bankruptcy estate and should be immediately turned over to the Trustee.

Based on the above, at this juncture, we ask that the Debtor take the following steps to help us in administering this Debtor's estate:

1. Please have the Debtor immediately remove any social media posts (Instagram, Facebook, etc.) about Bill Procida or 100 Mile REIT, Inc. Please also turnover the Debtor's social media account information and passwords to the Trustee.

2. Please provide an accounting of any funds received from the building's commercial tenants that were directed to Donata Garsia or any other agent of the Debtor. Ms. Garsia should also affirmatively withdraw and cease with any instruction to these tenants to pay her directly if this indeed is the case. The Debtor's schedules filed on September 16, 2024 also state that the Debtor has no outstanding receivables, please confirm this is the case.

3. Please provide us with a statement and the outstanding amount due to the PSE&G. Please also let us know if the Debtor has received a shut off Notice.

Thank you for your attention to these matters.

Best,

Justin

**Justin Baumgartner**

Attorney

Becker LLC

Eisenhower Plaza II

354 Eisenhower Parkway, Suite 1500

Livingston, New Jersey 07039

Phone: (973) 422-1100

Direct Line: (973) 251-8920

Fax: (973) 422-9122

 www.becker.legal

---

**Art Factory** <create.artfactory@gmail.com>                    Wed, Oct 2, 2024 at 9:48 AM
To: John O'Boyle <joboyle@norgaardfirm.com>

John, per your instructions over a week ago both Donata and I left the property for good on Monday, Sept 23. I only returned to meet with you and Kevin briefly last Friday. We haven't accepted any money whatsoever and haven't conversed with anyone that was or may still be at the property for any reason, let alone instructing anyone to pay us or the company anything. We only have the camera footage from the burglars that stole our personal property and estate property.

We have taken down the entire instagram and facebook account. The account is @artfactorypaterson and the password is trustee1 if they want to go back in for some reason.

The only "receivables" would have been from members who had not paid and would never pay or from upcoming weddings that were paying in installments - weddings that will not happen since we were shut down, so I don't think they would be considered receivables.

As all PSE&G bills are paper. We left them in the building when we vacated per your instruction.

Dave

[Quoted text hidden]

6/23/25, 8:17 AM                                    Gmail - FW: GREAT FALLS INDUSTRIAL PARK Requests from Chapter 7 Trustee

**John O'Boyle** <joboyle@norgaardfirm.com>                                        Thu, Oct 3, 2024 at 3:51 PM
To: Justin Baumgartner <jbaumgartner@becker.legal>, Eric R Perkins <eperkins@becker.legal>


October 3, 2024


Justin & Eric:


To confirm my conversation with Justin of October 1, and to respond to Justin's email below:


1. David & Donata Garsia confirmed that they have not instructed any person that held space in the 70 Spruce St property to remit payments to either of them since commencing the case in August, 2024. As I related to Eric, for a few months prior to that, they used a personal account to operate the debtor's business, out of concern that funds deposited in the debtor's account would have been withdrawn automatically by MCA lenders. The Debtor deposited all funds received postpetition in its own accounts; it is prepared to turnover any funds it held as of conversion.


2. With the exception of Mr. Garsia's tour of the property with Harry Byrnes and me on September 26, neither he nor Mrs. Garsia have returned to the property. Mr. Garsia has informed me that he has video of some of the people who held space in the property returning to the property and removing items – and entering his office and apartment to remove personal and estate property.


3. With Eric's supervision, Mr. Garsia would like to return to the property promptly so he can identify and recover the Debtors agreements with its customers. We need those to get the customers' addresses so we can amend the schedules. These parties are not listed on the schedules presently, as Mr. Garsia has only email addresses – not mailing addresses.


4. Also, Mr. Garsia informs that all PSE&G bills are on paper and were left at the location. He needs access to the property to recover those and confirm how much his due PSE&G. He advises that there were several different accounts with several different meters, all of which were on paper billing.


5. He informs that he has taken down the Debtors' instagram and facebook accounts. The account is @artfactorypaterson, and the password is trustee1


6. He confirmed that there are no "receivables" or other amounts owed to the Debtor.

John O'Boyle, Esq.

Norgaard, O'Boyle & Hannon

184 Grand Avenue

Englewood, NJ  07631

Phone: (201) 871-1333

Mobile: (862) 216-1475

Fax: (201) 871-3161

Email: joboyle@norgaardfirm.com


cc:  Client

[Quoted text hidden]

---

**John O'Boyle** <joboyle@norgaardfirm.com>                    Thu, Oct 3, 2024 at 4:34 PM
To: Art Factory <create.artfactory@gmail.com>

Dave I just tried to call you at both numbers you provided.  Please give me a call – I will be here for about 10 more minutes, or we can speak tomorrow (I have a 930 appointment).

[Quoted text hidden]